Nicholas **FLINK**, Appellant,

v.

**STATE of Alaska**, Appellee.

Nos. 6962, 7060.

Court of Appeals of Alaska.

May 11, 1984.

Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

PER CURIAM.

■ Nicholas Flink was convicted of various sexual offenses involving children, including one count of first-degree sexual assault. He appeals challenging the constitutionality of former AS 11.41.440(a)(2)[1] (sexual abuse of a minor) and former AS 11.51.130(a)(4)[2] (contributing to the delinquency of a minor). Both of these statutes prohibit sexual contact with children. Flink contends that the statutory definition of "sexual contact"[3] includes innocent conduct and therefore renders the statutes unconstitutionally vague and overbroad. Flink received sentences totaling sixteen years' imprisonment, including ten years for first-degree sexual assault. He challenges these sentences as excessive. We reverse the convictions for sexual abuse and contributing to the delinquincy of a minor.[4] The ten-year sentence for first-de-

---

**1.** At the time of Flink's offenses, AS 11.41.440 provided in relevant part:

*Sexual abuse of a minor.* (a) A person commits the crime of sexual abuse of a minor if, being 16 years of age or older, he

(1) engages in sexual penetration with a person who is under 16 years of age but 13 years of age or older ...;

(2) engages in sexual contact with a person who is under 13 years of age ...;

(b) Sexual abuse of a minor is a class C felony.

**2.** AS 11.51.130 provided in relevant part:

*Contributing to the delinquency of a minor.* (a) A person commits the crime of contributing to the delinquency of a minor if, being 19 years of age or older, he

(4) engages in sexual contact with a child under 16 years of age but 13 years of age or older;

(b) Contributing to the delinquency of a minor is a class A misdemeanor.

**3.** AS 11.81.900(b)(51)(A) defines "sexual contact" as "the intentional touching, directly or through clothing, by the defendant of the victim's genitals, anus, or female breast." The definition of sexual contact has not been changed, but this section has been renumbered AS 11.81.-900(b)(52). In this opinion the definition of sexual contact will be referred to as AS 11.81.-900(b)(51).

**4.** All members of the court agree that the trial court erred in its instructions regarding the *mens rea* required for sexual abuse of a minor under former AS 11.41.440(a)(2) and contributing to the delinquency of a minor under former AS 11.51.130(a)(4). Judges Singleton and Coats hold that these are specific intent crimes. Judge Coats joins in part I of Judge Singleton's concurring and dissenting opinion. Judge Sin-

gree sexual assault is affirmed. The judgment of the superior court is REVERSED in part, AFFIRMED in part, and this case is REMANDED for further proceedings.

SINGLETON, Judge, concurring and dissenting.

## FACTS

During the spring of 1981, Flink befriended a group of boys living near him. The boys included thirteen-year-old A.T., nine-year-old M.H., eleven-year-old W.G., and nine-year-old C.A. The boys would visit Flink frequently to play with his farm animals and to play pinball and foosball. Alcohol and drugs were apparently readily available to the boys at Flink's house. Flink, a homosexual, admitted talking to the boys about many subjects, including sex.

The charges in the indictment arose from a series of events occurring in May and June of 1981. The state alleged that on three occasions Flink touched one or more of the boys' genitals. Flink conceded one instance of "sexual contact", but denied the boys' other charges. In addition, Flink was accused of, and admitted, performing fellatio on C.A.

The indictment charged six separate counts of sexual involvement with minors. A discussion of the individual charges and the evidence presented at trial follows.

## COUNT I

Count I charged Flink with sexual abuse of A.T. in May of 1981. A.T. was twelve years old at the time. He turned thirteen on June 2, 1981. The state's theory of the case was that while A.T. was visiting Flink's house, Flink provided rum and A.T. became intoxicated. As A.T. lay on a couch, Flink started to rub his back. Flink eventually reached for A.T.'s penis. When A.T. told Flink to stop, Flink complied.

Flink's account of the incident differed from A.T.'s Flink testified that A.T. was drinking but not drunk, and that he gave A.T. a back massage in response to the boy's complaint about a backache. He specifically denied touching A.T.'s penis or testicles.

The jury acquitted Flink of sexual abuse but convicted him of the lesser-included offense of attempt, apparently concluding that Flink reached for A.T.'s genitals but failed to touch them.

## COUNTS II AND III

In Count II Flink was accused of sexually abusing M.H. on June 3, 1981. In count III he was charged with contributing to the delinquency of A.T. during the same incident. The reason for the different charges was that M.H. was nine years old at the time while A.T. had turned thirteen.

The state's theory of the case was that A.T. and M.H. went to visit Flink who offered to give A.T. a birthday present in the form of a "blow job". A.T. refused but Flink persisted. When verbal encouragement failed, Flink pinned A.T. to the floor and started to remove A.T.'s pants, putting his face against A.T.'s crotch. A.T. called for M.H.'s help and a struggle ensued. The state originally alleged that Flink grabbed M.H.'s crotch during the struggle, but M.H. testified that Flink grabbed only his leg. Both boys finally worked loose of Flink's grasp and ran for the door.

Flink's testimony presented a different sequence of events. He testified that M.H. and A.T. came to visit him on June 3 and that A.T. initiated a discussion about sex. During this conversation, A.T. became playful and began to sexually tease Flink. Flink testified that this resulted in a friend-

---

gleton, however, finds the error harmless, while Judge Coats does not. Chief Judge Bryner agrees that the trial court's instructions on *mens rea* were improper, but would construe the statutes to require recklessness as the appropriate *mens rea*. Judge Coats joins in part II of Judge Bryner's concurring and dissenting opinion, which holds that the failure to give an appropriate *mens rea* instruction was not harmless error under the particular facts of this case. The full court joins in part III of Judge Singleton's opinion, affirming Flink's sentence for sexual assault in the first degree.

ly episode of wrestling between himself and the two boys. He specifically denied touching the genitals of either A.T. or M.H.

The jury acquitted Flink of count II involving M.H. and convicted him of count III involving A.T.

### COUNTS IV, V AND VI

Counts IV, V and VI involved incidents which occurred on June 17, 1981. In counts IV and V the state alleged that Flink sexually abused W.G. and C.A. Count VI charged Flink with engaging in sexual penetration with C.A.

W.G. and C.A. testified that they were visiting Flink's house when Flink offered to give them "head". He sent them into a utility closet with a coin, while he blindfolded himself. The boys were to flip the coin to determine who would come out first to receive fellatio, while Flink would remain ignorant of which boy was involved.

When the boys got into the closet, however, they decided they wanted to leave the house rather than go through with this sexual experience. They emerged, and W.G. told Flink that they did not want to continue. Flink grabbed W.G. by his crotch; C.A. then pulled on Flink's back to get him off of W.G. Flink then grabbed C.A. and started to remove C.A.'s pants. W.G. came to the aid of his friend, yanking on Flink's hair. C.A. got away, pulled up his pants, and the two boys fled.

Again, Flink's version of the events which occurred on June 17 was substantially different. Flink testified that W.G. and C.A. had asked him several times that day to perform fellatio on them. He further testified that when he refused the boys became insistent, indicating to him that they had erections; he stated that both boys pulled their pants back to demonstrate that they had erections. Flink admitted: "I did reach up and I touched them both and I perceived that they had [erec-

tions]." Flink testified that the boys then left.

Count VI involved an incident later that day when C.A. went back to Flink's house and asked him if he really would give him a "blow job". In a pretrial statement to the police, Flink admitted that he had in fact committed fellatio on C.A. A recording of Flink's statement was played for the jury.

Based upon all of this evidence, the jury found Flink guilty on counts IV, V and VI.

### I.

### MENS REA

Flink argues that former AS 11.41.-440(a)(2), prohibiting sexual abuse of a minor, and former AS 11.51.130(a)(4), prohibiting contributing to the delinquency of a minor, are unconstitutionally vague in violation of the due process clauses of the state and federal constitutions. *See* U.S. Const. amend. XIV, § 1; Alaska Const. art. 1, § 7. This argument is based upon the statutory definition of "sexual contact", which is a required element for both offenses.[1] He argues that the statutes fail to provide adequate notice of what conduct is prohibited, and more specifically, that they seem to punish innocent as well as culpable conduct.[2] *See Holton v. State*, 602 P.2d 1228, 1235–36 (Alaska 1979). He concedes that the statutes would be neither vague nor overbroad if construed to require as a *mens rea* specific intent to sexually arouse the assailant or the victim. *See State v. Rice*, 626 P.2d 104, 108 (Alaska 1981) (in the absence of clear legislative intent to the contrary, criminal statutes will be construed to require a *mens rea*); *Hentzner v. State*, 613 P.2d 821, 826 (Alaska 1980) (unless crime involved is *malum in se*, more than mere conscious action is required to satisfy criminal intent requirement); *Speidel v. State*, 460 P.2d 77, 78 (Alaska 1969) (conduct not criminal unless defendant had an awareness of wrongdoing). *See also Morissette v. United States*,

**1.** *See supra* notes 1–3 at 726.

**2.** Flink additionally argues that the term "sexual contact" is defined so as to chill the exercise of the first amendment right to freedom of religion. He claims that under the statute, circumcision, a Jewish ritual, is punishable.

342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288, 293 (1952). Thus Flink argues that the phrase "sexual contact" should be interpreted to require a sexual motive or purpose.

In order to address Flink's arguments we must ascertain what conduct the legislature sought to sanction by determining the legislature's intent in enacting the statute. We have previously recognized that the Alaska Revised Criminal Code is based upon a tentative draft derived from a number of state enactments which in turn were derived from the New York Revised Penal Code of 1965 and the American Law Institute's Model Penal Code. *See Neitzel v. State*, 655 P.2d 325, 327 (Alaska App.1982). Flink notes that Model Penal Code section 213.4 defines sexual contact as "any touching of the sexual or other intimate parts of the person *for the purpose of arousing or gratifying sexual desire.*" (Emphasis added.) The commentary to that section provides in relevant part:

> Section 213.4 applies to one who engages in sexual contact with a person not his spouse under a variety of enumerated circumstances. "Sexual contact" is defined to include "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." The phrase describing the requisite specific intent is based on similar language in a number of laws proscribing indecent liberties with children, and the idea is probably implicit in those statutes that are silent on the subject. The requirement of a particular purpose to arouse or gratify sexual desire distinguishes sexual imposition from ordinary assault and from noncriminal touching.

1 A.L.I., *Model Penal Code and Commentaries* Part II § 213.4, at 400 (1980) (footnote omitted). Flink notes that most state provisions that are based upon the Model Penal Code define sexual contact to include this specific intent. *See, e.g.,* N.Y. [Penal] Law Ann. § 130.00(3) (McKinney 1975) ("'sexual contact' means any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of any party.")

Flink also relies upon *State v. Berry*, 419 P.2d 337 (Ariz.1966). In *Berry*, the Arizona court avoided a constitutional challenge to Arizona Revised Statute section 13–653, which prohibits child molestation without regard to the actor's motives or intent, by construing the statute to require that the acts be performed with sexual motivation. *Id.* at 339–40. Flink suggests that we follow *Berry* and read a sexual motive or intent into the statutory definition of sexual contact.

The state vigorously opposes any interpretation of the statute which would require a specific sexual motive or intent as an element of sexual abuse. Recognizing that the Model Penal Code and most of the state enactments derived from it specifically require such a motive or intent, the state reasons that omission of this language from our statute implies a legislative intent to make all sexual offenses in Alaska general intent crimes. *See Neitzel v. State*, 655 P.2d at 327 (legislative omissions are sometimes as instructive as what the legislature includes in a statute).

The state notes that the subcommission that prepared the tentative draft indicated that the Alaska sexual assault and sexual abuse provisions were based primarily on Michigan statutes. *See* Mich.Comp.Laws Ann. § 750.520 (1983 Supp.). In addition, the definitions contained in the tentative draft for "actor", "victim" and "sexual contact" were based upon both Michigan and Arizona law. *See* Ariz.Rev.Stat.Ann. 13–1401(2) (1978).

With respect to sexual conduct with children, the primary distinction between the Model Penal Code and New York provisions on the one hand, and the Michigan and Arizona codes, on the other, is that the former expressly require a specific intent and the latter do not. The state argues that, because the definition of sexual contact in the Alaska Revised Code is derived from the Michigan and Arizona provisions, the legislature intended to require only

general intent for sexual contact crimes in Alaska.[3]

In order to evaluate the state's argument, we must undertake a review of the history of the relevant Michigan and Arizona statutes. The Michigan statutes were derived from a proposed code that was based upon the New York Penal Code of 1965. *See* Comment, *Sex Offenses and Penal Code Revision In Michigan,* 14 Wayne L.Rev. 934, 968 (1968). The proposed Michigan Revised Code ran into substantial opposition. When it became clear that it would not be adopted, the Michigan Women's Task Force on Rape lobbied for reform in the law of sexual offenses. Their efforts culminated in the drafting of the Criminal Sexual Conduct Act, to which the commission on our criminal code apparently referred in the tentative draft. *See* Note, *Criminal Law—Sexual Offenses—A Critical Analysis of Michigan's Sexual Conduct Act,* 23 Wayne L.Rev. 203, 208–09 (1976).

It is important to recognize that while the Michigan sexual offense statutes were based on the Revised New York Penal Code and the Model Penal Code, and that they share terminology, the Michigan code differs from the parent codes in a number of respects. The intent underlying these changes was generally to ease the prosecutor's burden in obtaining convictions in sexual offense prosecutions. In order to obtain this prosecutorial advantage, the Michigan code dispenses with specific intent in a number of situations where the parent codes require it.[4]

**3.** The state also directs our attention to former AS 11.15.134(a), which prohibited sexual conduct with children and required a specific intent to gratify the sexual passion of either the assailant or the victim. *See Anderson v. State,* 562 P.2d 351, 352 n. 1 (Alaska 1977).

**4.** The pertinent Model Penal Code provisions, the New York Penal Code provisions, and the Michigan law that was eventually enacted, are compared, contrasted and criticized in Note, Recent Statutory Developments in the Definition of Forcible Rape, 61 Va.L.Rev. 1500 (1975), and in the extensive commentary to Model Penal Code section 213, governing sexual offenses.

In Michigan "sexual contact" is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." Mich.Comp.Laws Ann. § 750.520a(g) (1983 Supp.). The tentative draft and the Alaska Revised Criminal Code adopted the language of the Michigan provision but omitted the language "if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." The Michigan appellate courts, relying in part on the language omitted by the Alaska legislature, have construed the offenses in question as general intent crimes. *See, e.g., People v. Brewer,* 101 Mich.App. 194, 300 N.W.2d 491 (1980).[5] The fact that the language in Michigan's provision which suggests general intent was left out of Alaska's definition of sexual contact is significant in determining the *mens rea* required by our statutes.

Arizona has two statutes which prohibit sexual conduct with children, short of sexual penetration. Arizona Revised Statute section 13–1404 (1983 Supp.), which is equivalent to former AS 11.41.440(a)(2), provides that "[a] person commits sexual abuse by intentionally or knowingly engaging in sexual contact with any person without consent of that person or with any person who is under fifteen years of age." Arizona Revised Statute Annotated section 13–1410 (1983 Supp.) provides:

*See* 1 A.L.I., Model Penal Code and Commentaries Part II art. 213 at 271 (1980).

**5.** The *Brewer* court specifically noted that this interpretation of current Michigan law required the same *mens rea* of general intent as prior Michigan law governing lascivious contact with children. The drafters of the Michigan statutes were apparently concerned that sexual assaults frequently occur when the assailant is intoxicated and wished to eliminate intoxication as a defense in sexual assault cases. *People v. Brewer,* 101 Mich.App. 194, 300 N.W.2d 491, 492 (1980).

A person who knowingly molests a child under the age of fifteen years by fondling, playing with, or touching the private parts of such child or who causes a child under the age of fifteen years to fondle, play with, or touch the private parts of such person is guilty of a felony.

The Arizona statutes define "sexual contact" as "any direct or indirect fondling or manipulating of any part of the genitals, anus or female breast." Ariz.Rev.Stat. Ann. § 13–1401(2) (1978). Finally, at the time the tentative draft was being considered in Alaska, the proposed Arizona code contained the following defense to sexual offenses:

§ 13–1407. Defenses.

A. It is a defense to a prosecution pursuant to §§ 13–1404 and 13–1405, involving a minor, if the act was done in furtherance of lawful medical practice.

Section 13–1407 was amended in 1983 to provide:

E. It is a defense to prosecution pursuant to § 13–1410 that the defendant was not motivated by a sexual interest.

In *State v. Madsen,* 137 Ariz. 16, 667 P.2d 1342, 1344 (Ariz.App.1983), the court relied on *State v. Berry,* 419 P.2d at 337, which interpreted prior law, for the proposition that section 13–1410 requires that the forbidden acts be "motivated by an unnatural or abnormal sexual interest with respect to children." However, in *Madsen,* the court held that whether the defendant's intent is abnormal or unnatural "must be judged by a community standard rather than his personal beliefs." 667 P.2d at 1344. Thus, the Arizona statutes appear to require general intent only, providing statutory defenses for innocent conduct.

The state additionally relies on recommendations by the American Bar Association's National Legal Resource Center for Child Advocacy and Protection in *Recommendations for Improving Legal Intervention in IntraFamily Child Sexual Abuse Cases* (1982). Specifically, it relies upon recommendation 1.6 and its accompanying commentary. The recommendation provides in relevant part:

The following acts should constitute sexual abuse of a child:

. . . .

(4) the intentional touching of the genitals or intimate parts (including the breasts, genital area, groin, inner thighs, and buttocks) or the clothing covering them, of either the child or the perpetrator, EXCEPT that, it shall not include:

(a) acts which may reasonably be construed to be normal caretaker responsibilities, interactions with, or affection for a child; or

(b) acts intended for a valid medical purpose. . . .

*Id.* at 13–14. The commentary states in part:

It also was decided that for acts involving sexual touching [Section (4)], the intent or purpose of the touching would not be included. One reason for this choice is that the motivation for committing sex offenses varies widely and may encompass some purpose which would not be stated. Further, it was felt that a more logical method was to include language as to what contact should be exempted from inclusion in the definition. The reasoning is that prosecutors should not have to prove as an element of the crime the perpetrator's intent or purpose when he sexually touches a child. Thus, language often used in statutes such as "for the purpose of sexual arousal or gratification," or other similar purpose is not included as an essential element of the crime.

Some reform statutes have dealt with the above problem by stating that the touching must be intentional, and "for the purpose of sexual arousal or gratificaton." In addition, some statutes use language that the touching must be "reasonably construed as being for the purpose of sexual arousal or gratification." One court's interpretation of the latter terminology is that it be "read as a substantial lessening of the prosecutor's burden of proof; the touching must be intentional but the actor's purpose need

not be proven to the jury. On the contrary, the jury may find that the actor's actual purpose was other than sexual gratification, e.g., anger, revenge, but still find that sexual contact had taken place." Indeed, one court stated that such language is included in the statute "in order to exclude from its coverage affectionate caresses of a child." Since this appears to be the legislative intent in using "for the purpose of" language, it was felt that a better approach is to specifically state the exclusion, and place the burden on the defendants to prove that the acts did not have a sexual purpose.

*Id.* at 15–16 (footnotes omitted).

The state argues that our statutes could be interpreted in a manner consistent with these recommendations and the statutes adopted in Michigan and Arizona. Under this interpretation sexual contact with children would be a general intent crime; prosecution for innocent conduct would be prevented by allowing the defendant a defense if the evidence raised a reasonable doubt that his conduct was harmless. *See* AS 11.81.430.[6]

The state reasons that all lawful parental actions resulting in "sexual contact", to the extent they technically fall within the prohibited conduct described in former AS 11.-41.440(a)(2) and former AS 11.51.130(a)(4), would be excused by the defense established in AS 11.81.430. In this regard, the state reasons that AS 11.81.430 is the conceptual equivalent of Arizona Revised Statute section 13–1407, and accordingly serves the purposes outlined in the Legal Resource Center's recommendation.

Alaska Statute 11.81.430 is derived from Model Penal Code section 3.08. *See* Model Penal Code § 3.08, comment Tent.Draft No. 8 at 71 (Tent.Draft 1958) (use of force by those in special relationships). The state's argument finds some support in the commentary to Model Penal Code section 1.13, which suggests as a rationale for statutory defenses that the evidence supporting the defense would be relatively more accessible to the defendant. *See* Model Penal Code § 1.13, comment Tent. Draft No. 4 at 111 (Tent.Draft 1958). It is clear that the evidence supporting a defense of "harmless" sexual contact would be relatively more accessible to the defendant.

We have carefully reviewed the legislative history accompanying the enactment of former AS 11.41.440(a)(2) and former AS 11.51.130, particularly the definition of "sexual contact" in AS 11.81.900(b)(51)(A). We find no specific discussion in the commentary regarding the culpable mental states for those offenses. We have also carefully considered the tentative draft and its commentary. It is equally silent regarding appropriate culpable mental states. Having reviewed as well the statutes upon which our Revised Code is based, we are left in substantial doubt as to the Alaska legislature's intentions regarding the culpable mental states for these crimes. *See* AS 11.81.600(b)(2).

6. AS 11.81.430 provides in relevant part:
   (a) The use of force upon another person that would otherwise constitute an offense is justified under any of the following circumstances:
   (1) when and to the extent reasonably necessary and appropriate to promote the welfare of the child ... a parent, guardian, or other *person entrusted with care and supervision of* a child under 18 years of age ... may use reasonable and appropriate nondeadly force upon that child ....
   ....
   (5) A licensed physician, paramedic, or registered nurse; or a person acting under [his] direction ... may use reasonable and appropriate nondeadly force for the purpose of ad-

ministering a recognized and lawful form of treatment which is reasonably adapted to promoting the physical or mental health of the patient if
   (A) the treatment is administered ... if the patient is a child under eighteen years of age ... with the consent of the parent, guardian, or other person entrusted with care and supervision ....
The state notes that "force" is defined broadly to include any unprivileged touching and is therefore the equivalent of a common law assault or battery. Alaska Statute 11.81.900(22) provides: " 'force' means any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement, 'force' includes deadly and nondeadly force."

While the parties have made plausible arguments, we find substantial problems with those arguments. On the one hand, while most of the statutes derived from the Model Penal Code include in their definition of sexual contact a sexual motivation, our statute does not. On the other hand, the Michigan and Arizona statutes, upon which the state contends the code revisers relied, are equally distinct from the statutes ultimately adopted by our legislature. Michigan includes language in its definition of "sexual contact" clearly suggesting general intent. This language was not carried over into the Alaska statute. Arizona adopted specific defenses to charges of sexual abuse which are likewise absent from the Alaska statutes. While an extensive commentary accompanied both the tentative draft and the Revised Code, indicating the reviser's familiarity with code revisions in other states, nothing in the commentary to the sexual offense statutes addresses the question of *mens rea* which must accompany sexual contact. "[A]mbiguities in penal statutes must be narrowly read and construed strictly against the government." *State v. Rastopsoff,* 659 P.2d 630, 640 (Alaska App.1983), *citing* 3 C. Sands, *Sutherland on Statutory Construction* § 59.03 at 6–8 (4th ed. 1974).[7]

▬ When we construe the phrase "sexual contact" strictly in favor of the defendant, we note that sexual abuse requires *sexual* contact. While any intentional touching of a person's genitalia in-

volves "contact", certain results are required to render that contact "sexual". The adjective "sexual", which is not specifically defined in the code, is defined in general usage as: "1. of sex or the sexes or the relationship or feelings etc. between them. 2. (of reproduction) occurring by fusion of male and female cells." *Oxford American Dictionary* 622 (1980). *See* AS 01.10.040 (in the absence of a statutory definition, words in statutes should be given their customary meaning). We therefore conclude that genital contact in order to be "sexual contact" must be intended to result in either the sexual arousal or sexual gratification of the actor or the victim.[8] So construed, former AS 11.41.440(a)(2) and former AS 11.51.130(a)(4) are specific intent crimes, very similar to former AS 11.15.-134(a). The statutes are therefore neither vague nor overbroad. Since they do not penalize innocent conduct, they do not violate Flink's constitutional rights.

## II.

### HARMLESS ERROR

I dissent from the reversal of Flink's convictions for sexual abuse and contributing to the delinquincy of a minor. I find any error in failing to properly instruct the jury to be harmless.

The following instruction is representative of those given in this case describing the offense of sexual abuse of a minor:

---

7. We note that a number of the revised codes derived from the Model Penal Code, which were considered by the subcommission which prepared the tentative draft of our Alaska Revised Criminal Code, specifically reject the common law principle that criminal statutes are to be construed strictly in favor of criminal defendants. *See* N.Y. [Penal] Law Ann. § 5.00 (McKinney 1975). Oregon Revised Statute section 161.025(2) provides:

> The rule that a penal statute is to be strictly construed shall not apply to chapter 743, Oregon Laws 1971, or any of its provisions. Chapter 743, Oregon Laws 1971, shall be construed according to the fair import of its terms, to promote justice and to effect the purposes stated in subsection (1) of this section.

In other respects Oregon Revised Statute section 161.025(1), which sets forth the general purposes of the criminal code, is virtually identical to AS 11.81.100. Nevertheless, AS 11.81.100 does not reject the proposition that criminal statutes should be strictly construed. *See* AS 01.10.010 (common law is applicable in Alaska unless changed by statute). Consequently, we follow the common law "strict construction" rule in construing the new criminal code.

8. We are satisfied that the phrase "sexual arousal or gratification" includes satisfaction of sexual curiosity as well as the use of a specifically sexual assault to degrade or humiliate the victim. Naturally, a sexual purpose need not be the only reason for a defendant's conduct, to bring that conduct within the statute. *See* AS 11.81.900(a)(1).

In order to establish the crime of sexual abuse of a minor, as charged in Count II of the indictment, it is necessary for the state to prove beyond a reasonable doubt the following:

> First, that the event in question occurred at or near Wasilla, Alaska, and on or about June 3, 1981;
>
> Second, that Nicholas A. Flink, III, was sixteen years of age or older;
>
> Third, that the defendant engaged in sexual contact with M.H. by intentionally touching M.H.'s penis; and
>
> Fourth, that M.H. was under thirteen years of age.

Sexual contact was defined in the instructions, as it is in the criminal code, as the "intentional touching, directly or through clothing, by the defendant of the victim's genitals, anus, or female breasts." Flink objected to this instruction and proposed to change the third element as follows:

> Third, that the defendant engaged in sexual contact with M.H. for the purpose of sexual gratification or arousal by intentionally touching M.H.'s penis for the purpose of sexual gratification or arousal.

The jury was given similar instructions defining the offense of contributing to the delinquency of a minor to which Flink interposed similar objections regarding the definition of sexual contact. The court, in effect, instructed the jury that sexual abuse of a minor and contributing to the delinquency of a minor were general intent crimes; Flink unsuccessfully requested that the court instruct that they were specific intent crimes. While we have held that the jury should have been instructed that sexual abuse of a minor and contributing to the delinquency of a minor were specific intent crimes to the extent that they required "sexual contact", it does not necessarily follow that Flink's conviction must be reversed.

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Alaska R.Crim.P. 47(a). Jury instructions which minimize the state's burden to prove the necessary elements of an offense raise constitutional problems. Before we can find that a constitutional error was harmless, we generally must be convinced that it was harmless beyond reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967).

I am satisfied that although the instructions in this case reduced the state's burden to prove intent, reversal is not required. In *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), the Supreme Court reviewed a decision by the Connecticut Supreme Court refusing to analyze for harmlessness an error establishing a conclusive presumption of intent in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The court split three ways. Justice Stevens concluded that federal law did not require a state appellate court to make a harmless error determination. 460 U.S. at —, 103 S.Ct. at 978, 74 L.Ed.2d at 835. He consequently joined in a decision to affirm. Four justices joined in a dissenting opinion voting to reverse the Connecticut court and hold that the error in that case was harmless beyond a reasonable doubt. 460 U.S. at —, 103 S.Ct. at 979, 74 L.Ed.2d at 836. A four-justice plurality joined in an opinion by Justice Blackmun which would have adopted a rule of near automatic reversal for a *Sandstrom* error. However, Justice Blackmun recognized:

> There may be rare situations in which the reviewing court can be confident that a *Sandstrom* error did not play any role in the jury's verdict .... [A] *Sandstrom* error may be harmless if the defendant conceded the issue of intent. In presenting a defense such as alibi, insanity, or self-defense, a defendant may in some case admit that the act alleged by the prosecution was intentional, thereby sufficiently reducing the likelihood that the jury applied the erroneous instruction as to permit the appellate court to consider the error harmless. We leave it to

the lower courts to determine whether by raising a particular defense or by his other actions, a defendant himself has taken the issue of intent away from the jury.

460 U.S. at ——, 103 S.Ct. at 977–78, 74 L.Ed.2d at 834 (citations and footnote omitted).

I am satisfied that the situation contemplated by Justice Blackmun was present in this case. Flink concedes that his conviction of sexual assault in the first degree, Count VI of the indictment, must stand. Count II need not concern us for Flink was acquitted. Thus, Count I, alleging sexual abuse of A.T., Count III alleging sexual contact with A.T., Count IV alleging sexual abuse of W.G., and Count V alleging sexual abuse of C.A., must be considered.

Flink concedes that the minors' testimony, if believed, would have established that Flink engaged in sexual contact with the minors for his own sexual gratification or theirs. Flink argues, however, that his testimony would have permitted the jury to infer that he had intentionally touched the childrens' genital areas, but without a sexual motive. I disagree. Flink's defense to Count I and Count III was that he had not touched the genital areas of the children involved but rather had engaged in roughhouse wrestling with them. If the jury believed Flink, he did not touch the children's genitals at all and could not have been convicted under the court's instructions. Assuming that the jury considered part of Flink's testimony and part of the children's, and came to the conclusion that Flink had inadvertently touched the children's genitals while wrestling with them, he still could not have been convicted under the instruction requiring an "intentional" touching. An accidental or inadvertent touching would not establish general criminal intent and satisfy the instruction. I would therefore affirm Flink's convictions on Count I and Count III of the indictment.

Counts IV and V present a more difficult question. Essentially, Flink testified that eleven-year-old W.G. and nine-year-old C.A. approached him unsolicited and requested that he perform fellatio on them. Construing the record most favorably to Flink, he refused, responding that they were not old enough to have erections. They then demonstrated to him that they were capable of erections and Flink grasped their penises to satisfy his curiosity and because they asked him to. Taking into account that there is no evidence of diminished capacity in this case and that Flink admitted shortly after this encounter that he committed fellatio on nine-year-old C.A., I find that Flink, in fact, admitted sexual motivation for his acts and that failure to instruct the jury on specific intent was harmless beyond a reasonable doubt. I would therefore affirm Flink's convictions on Counts IV and V of the indictment.

## III.

### SENTENCE

Flink was sentenced as a first-felony offender. He received six months for attempted sexual abuse of a minor, six months for contributing to the delinquency of a minor, two and one-half years for each of the two convictions for sexual abuse of a minor, and ten years for the first-degree sexual assault conviction. Judge Carlson ordered the sentences to be served consecutively for a total sentence of sixteen years' imprisonment.[9]

Flink argues that the ten-year sentence for first-degree sexual assault was excessive under the circumstances. We disagree. When Flink committed his offenses, first-degree sexual assault was a class A felony, former AS 11.41.410(b), which carried a maximum potential sentence of twenty years. Former AS 12.55.125(c). There was a six-year presumptive term prescribed for offenders who possessed or used a firearm or caused serious physical injury; the presumptive term for a second offender

---

**9.** The decision of a majority of this court to reverse, renders it unnecessary for us to address the sentencing issues except insofar as they effect Flink's sentence for first-degree sexual assault.

was ten years. Former AS 12.55.125(c)(1), (2). In *Austin v. State*, 627 P.2d 657 (Alaska App.1981), we held that normally a first offender should receive a term more favorable than the presumptive term for a second offender. In *Peetook v. State*, 655 P.2d 1308, 1310 (Alaska App.1982), we applied the reasoning of *Austin* to first-degree sexual assault and indicated that a first offender who does not use a firearm or cause serious physical injury should receive a more favorable sentence than the six-year term prescribed under AS 12.55.-125(c)(1), in the absence of aggravating factors or extraordinary circumstances. *See* AS 12.55.155(c) (aggravating factors); AS 12.55.165–.175 (case may be referred to a three-judge panel when imposition of the presumptive sentence would result in manifest injustice because of "extraordinary circumstances").

■ Thus, in order for Flink to receive a term greater than six years for first-degree sexual assault, there must be sufficiently verified facts in the record to indicate that his crime was more serious than one in which a firearm was used or in which the victim sustained serious physical injury. *Langton v. State*, 662 P.2d 954, 961 (Alaska App.1983). An enhanced sentence would be justified either by finding aggravating factors set out under AS 12.55.-155(c) or extraordinary circumstances. We are satisfied that Judge Carlson made the requisite finding of extraordinary circumstances. Flink was first convicted of a sexual offense against a minor in 1965 when he was nineteen. He was convicted of a number of theft offenses at that time and apparently had established a shoplifting ring consisting of teenage boys four or five years younger than himself. He engaged in sexual acts with these boys. As a result, he received extensive therapy and was required to live briefly in a therapeutic institution. In September of 1975, while still on parole supervision, Flink was again convicted of contributing to the delinquen-

cy of a minor for engaging in sexual activity with an adolescent. He was sentenced to serve one year at the Eagle River Correctional Institution. *Cf.* AS 12.55.-155(c)(21) (the sentencing court may aggravate the presumptive term if the defendant has a criminal history of repeated instances of conduct violative of criminal laws, whether punishable as felonies or misdemeanors, similar in nature to the offense for which the defendant is being sentenced). The psychiatric reports and the presentence report indicate that Flink is a confirmed pedophiliac who sees nothing wrong with engaging in sexual activity with small children so long as no force is used and they "freely consent". Under the circumstances, Judge Carlson did not err in concluding that the possibility of rehabilitation was virtually nonexistent and imposing a ten-year sentence for this offense.

BRYNER, Chief Judge, concurring and dissenting.

I agree with the majority of the court that the superior court failed to instruct Flink's jury properly concerning the essential elements of sexual abuse of a minor. I also agree that the statutes governing this offense must be interpreted to require proof of a criminal intent. However, I cannot agree that the offense of sexual abuse of a minor requires proof of specific intent. Nor do I believe that the superior court's failure to give appropriate instructions to the jury in this case constitutes harmless error.[1]

## I. MENS REA

At the time of Flink's offense, AS 11.41.-440(a)(2) provided, in relevant part:

(a) A person commits the crime of sexual abuse of a minor if, being 16 years of age or older he engages in

· · · · ·

---

**1.** I join in the conclusion that Flink's conviction of Count VI of the indictment, which charged first-degree sexual assault, must be affirmed. I also join in part III of Judge Singleton's opinion, which affirms Flink's sentence for first-degree sexual assault.

(2) sexual contact with a person who is under 13 years of age.[2]

At the time of Flink's offenses, the term "sexual contact," was defined in AS 11.81.-900(b)(51):

(51) "Sexual contact" means

(A) the intentional touching, directly or through clothing, by the defendant of the victim's genitals, anus, or female breast; or

(B) the defendant's intentionally causing the victim to touch, directly or through clothing, the defendant's or victim's genitals, anus, or female breast.[3]

The position taken by the state is that this statutory language should be applied literally. Thus, the state urges us to hold that sexual abuse can be established by proof of a voluntary act of sexual contact. The state concedes that the statutory definition of sexual contact is broad, but it maintains that the possibility of punishing innocent conduct has been avoided by the statute which provides that use of nondeadly force is justified in certain circumstances involving special relationships between adults and children. The state relies on the defense of justification defined in AS 11.-81.430, which provides, in relevant part:

*Justification: Use of force, special relationships.* (a) The use of force upon another person that would otherwise constitute an offense is justified under any of the following circumstances:

(1) When and to the extent reasonably necessary and appropriate to promote the welfare of the child or incompetent person, a parent, guardian, or other person entrusted with the care and supervision of a child under eighteen years of age or an incompetent person may use reasonable and appropriate nondeadly force upon that child or incompetent person.

(2) When and to the extent reasonably necessary and appropriate to maintain order and when the use of force is consistent with the welfare of the students, a teacher may, if authorized by school regulations and the principal of the school, use reasonable and appropriate nondeadly force upon a student ....

.     .     .     .     .

(5) A licensed physician, paramedic, or registered nurse; or a person acting under the direction of a licensed physician, paramedic, or registered nurse; or any person who renders emergency care at the scene of an emergency, may use reasonable and appropriate nondeadly force for the purpose of administering a recognized and lawful form of treatment which is reasonably adapted to promoting the physical or mental health of the patient if

(A) the treatment is administered with the consent of the patient or, if the patient is a child under eighteen years of age or an incompetent person, with the consent of the parent, guardian, or other person entrusted with care and supervi-

---

**2.** The legislature has recently redefined the offense of sexual abuse of a minor, providing for four separate degrees of sexual abuse. *See* AS 11.41.434–.440. The provisions of former AS 11.41.440(a)(2) under which Flink was convicted have, in substance, been reenacted as AS 11.41.436(a)(2). This conduct is now classified as sexual abuse of a minor in the second degree, a class B felony. *See* AS 11.41.436(b). At the time of Flink's offenses, sexual abuse of a minor was a class C felony. *See* former AS 11.41.-440(b).

Flink was also convicted of contributing to the delinquency of a minor, AS 11.51.130. At the time of Flink's offense, AS 11.51.130 provided, in relevant part:

(a) A person commits the crime of contributing to the delinquency of a minor if, being 19 years of age or older, he

.     .     .     .     .

(4) engages in sexual contact with a child under 16 years of age but 13 years of age or older.

As charged in this case, the contributing to the delinquency of a minor statute was a lesser offense of sexual abuse of a minor, differing only in the requirement governing the age of the victim. The offense was a class A misdemeanor. Because the statutory definition of "sexual contact" is crucial both to the sexual abuse charges and the charge of contributing to the delinquency of a minor in Flink's case, my discussion of "sexual contact" applies to both offenses.

**3.** The statutory definition of "sexual contact" has not been altered by the legislature. However, the definition has been renumbered and is currently contained in AS 11.81.900(b)(52).

sion of the child or incompetent person; or

(B) the treatment is administered in an emergency if the person administering the treatment reasonably believes that no one competent to consent can be consulted under the circumstances and that a reasonable person, wishing to safeguard the welfare of the patient, would consent.[4]

The state notes that the revised criminal code defines "force" [5] sufficiently broadly to include any physical touching, including innocent types of touching that might otherwise fall within the statutory definition of sexual contact. Thus, the state concludes that no criminal intent apart from a knowing act of sexual contact should be read into the statutory provisions governing sexual abuse of a minor.

In contrast, Flink contends that if the sexual abuse statute is applied literally, as proposed by the state, the offense would lack any criminal intent requirement and would therefore violate the constitutional right to due process of law. There is considerable merit to Flink's constitutional

concerns. The literal language of the sexual abuse of a minor statute prohibits any conduct amounting to a sexual contact. The term sexual contact is in turn defined expansively in AS 11.81.900(b)(51). A literal reading of this provision would encompass within the definition of "sexual contact" an extremely wide range of innocent and necessary everyday activities that are integrally related to parental and medical care. For example, nursing a baby, carrying a child on one's shoulders or lap, bathing a child, and changing a child's diapers are all acts that can be construed to fall within the literal statutory definition of sexual contact. Under the definition of sexual contact contained in AS 11.81.-900(b)(51), the only requirement of intent is that the acts be knowingly performed.[6]

Because the provisions governing sexual abuse of a minor do not expressly impose an intent requirement other than a knowing act of sexual contact, and because "sexual contact" is broadly defined to include numerous parental, custodial and medical acts of a necessary and innocent nature, the offense would, in effect, be a strict liability crime unless the literal language of

**4.** Justification under AS 11.81.430 is a defense. *See* AS 11.81.300. The term "defense" is defined as follows in AS 11.81.900(b)(15):

(15) "defense", other than an affirmative defense, means that

(A) some evidence must be admitted which places in issue the defense; and

(B) the state then has the burden of disproving the existence of the defense beyond a reasonable doubt.

**5.** "Force" is defined in AS 11.81.900(b)(22), which provides:

(22) "force" means any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement; "force" includes deadly and nondeadly force.

**6.** The words "intentional" and "intentionally," as used in the statutory definition of "sexual contact," do not imply creation of a specific intent requirement. Although AS 11.81.900(a)(1) makes it clear that statutory references to "intentional" conduct normally imply specific intent, under that statutory provision, specific intent can relate only to the results of a person's conduct. Thus, a person acts intentionally when his "conscious objective is to cause" a result specified by law. *Id.* The word "knowingly" is used by the code as the mental state

that ordinarily relates to conduct. Thus, under AS 11.81.900(a)(2), a person acts "knowingly" if he engages in proscribed conduct with an awareness of the nature of his conduct. Under AS 11.81.900(a)(3), the word "recklessly" is generally specified as the culpable mental state that relates to the circumstances of an offense. Since the definition of sexual contact contained in AS 11.81.900(b)(51) plainly uses "intentional" and "intentionally" to relate to conduct, and not result, the statutory language must be construed to require conduct that is "knowing" under AS 11.81.900(a)(2).

The use of "intentional" and "intentionally" in the definition of "sexual contact" appears to be carried over from the Tentative Draft of the Revised Alaska Criminal Code, in which the mental state "intentionally" could relate to either conduct or results. Under the Tentative Draft, if "intentionally" related to conduct instead of result, its meaning was synonymous to "knowingly." *See generally Neitzel v. State,* 655 P.2d 325, 328–30 (Alaska App.1982) (holding that the language of Alaska's second-degree murder statute, applicable to a person who "intentionally performs an act that results in the death of another person," must be construed to require knowing conduct and not specific intent).

the statutes was construed to require some additional element of criminal intent. Although the statutory definition of sexual contact requires knowing conduct and therefore includes an element of intent, that element does not help to differentiate between the wide variety of innocent touchings and harmful touchings potentially covered by the broad definition of sexual contact. Thus, the intent element included in the statute is not a criminal intent and does not satisfy the requirement of *mens rea* —that is, a *culpable* mental state, or an awareness of wrongdoing. *See, e.g., State v. Rice*, 626 P.2d 104, 107–09 (Alaska 1981); *Hentzner v. State*, 613 P.2d 821, 826 (Alaska 1980); *Holton v. State*, 602 P.2d 1228, 1235–36 (Alaska 1979); *Speidel v. State*, 460 P.2d 77, 78 (Alaska 1969); *Wheeler v. State*, 659 P.2d 1241, 1250–51 (Alaska App. 1983). *See also Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288, 293 (1952). An awareness of wrongdoing might be unnecessary if the conduct prohibited by the statute was itself necessarily harmful—*malum in se*. However, the range of conduct prohibited is so broad that the offense is *malum prohibitum*, and an awareness of wrongdoing must be included as a necessary element. *See Hentzner v. State*, 613 P.2d at 826.

It is insufficient to argue, as does the state, that the lack of an express criminal intent requirement in the sexual abuse statute is cured by the justification statute, which creates a defense when the use of nondeadly physical force is reasonable and necessary for parental, custodial or medical purposes. If the state's argument for literal statutory construction were adopted, the statutes governing sexual abuse of a minor would in effect create a presumption that any act of knowing sexual contact was culpable. Unless the accused presented some evidence of justification, that presumption would be binding: the jury would not have the authority to reject the presumption and would be required to convict. Thus, the state would be permitted to charge people and bring them to trial for a wide variety of normal parental, custodial and medical acts, and those people would be subjected to conviction unless they were prepared to place the question of justification in issue. The grand jury would not consider the issue of justification before indicting, and the petit jury would consider it only if raised by the accused.

The problem with this approach is that the presumption of a culpable touching is simply irrational. The types of necessary and reasonable parental, custodial and medical contacts that are included within the statutory definition of sexual contact constitute the norm rather than the exception—they are realistically far more commonplace than the sexually motivated or otherwise harmful touching that the sexual abuse statute rightfully seeks to prevent. Thus, a presumption that acts falling within the definition of sexual contact will be culpable and subject to criminal sanction plainly lacks empirical validity and is rationally untenable. Such a presumption, since it is untenable, would violate due process. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 156–60, 99 S.Ct. 2213, 2224–26, 60 L.Ed.2d 777, 791–94 (1979); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

Thus, in order to pass constitutional muster the offense of sexual abuse of a minor must be construed to require proof of a criminal intent beyond a knowing act of sexual contact. However, I do not think that the statutes governing this offense can reasonably be construed to require proof of specific intent. To the contrary, I believe that the legislature's desire to eliminate specific intent as an element of sexual abuse of a minor is abundantly clear.

The definition of sexual contact contained in AS 11.81.900(b)(51) is on its face unambiguous: this definition unmistakably omits any reference to a specific intent to arouse sexual interest. Because AS 11.81.900(b)(51) defines the term "sexual contact," and not just the word "contact," I find it difficult to accept the majority's conclusion that something more should be read into the word "sexual" than is already contained in the definition of sexual contact.

Moreover, under prior Alaska law, a specific intent to gratify sexual passion was expressly required to prove the offense of lewd and lascivious acts toward a child, a crime comparable to the current offense of sexual abuse of a minor. *See* former AS 11.15.134(a). It seems highly unlikely that the legislature would have neglected to use specific intent language similar to that contained in the former statute had it wanted to enact a sexual abuse law requiring specific intent. In this regard, I also think it is significant that, as Judge Singleton's opinion recognizes, the traditional specific intent requirement was dispensed with by the Michigan and Arizona statutes from which Alaska's current sexual abuse of a minor law was initially derived.

The only arguable indication that the legislature might have wanted to retain specific intent as an element of sexual abuse is the lack of any express discussion of eliminating specific intent in the commentary to the Revised Alaska Criminal Code or the commentary to the Tentative Draft. Yet I do not think that the silence of the code commentaries gives rise to a level of ambiguity sufficient to warrant judicial resurrection of the specific intent requirement. It seems entirely plausible that the absence of any discussion in the commentaries concerning specific intent reflects an understanding by the drafters of the code that specific intent simply was not relevant to the offense of sexual abuse of a minor. Thus, I would conclude that there is nothing in the express language of the sexual abuse statute or in the legislative history of that provision to justify an interpretation adding a specific intent requirement to the offense of sexual abuse of a minor.

Nor do I believe that it is necessary to read specific intent into the sexual abuse statute in order to avoid constitutional problems; the statutory provisions generally applicable to all offenses within the Revised Alaska Criminal Code suggest a more suitable *mens rea* requirement than that of specific intent.

Under AS 11.81.600, the state is required to prove a criminal intent, or "culpable mental state," unless the legislature manifests its intent to dispense with the mental element of an offense. AS 11.81.610(b) specifies the culpable mental states applicable in cases where one is not expressly provided for in the statutory definition of an offense:

(b) Except as provided in AS 11.81.600(b) if a provision of law defining an offense does not prescribe a culpable mental state, the culpable mental state that must be proved with respect to

(1) conduct is "knowingly"; and

(2) a circumstance or a result is "recklessly."

In *Reynolds v. State*, 664 P.2d 621 (Alaska App.1983), this court considered the applicability of AS 11.81.610(b) to cases of first-degree sexual assault involving nonconsensual sexual penetration in violation of AS 11.41.410(a)(1). We noted that a mental state was not expressly provided for under AS 11.41.410(a)(1). We held that, under AS 11.81.610(b)(1), the state must prove that the accused knowingly engaged in conduct—an act of sexual penetration. We went on to hold that, under AS 11.81.610(b)(2), the state was implicitly required to establish that the accused acted recklessly with respect to the circumstances of the offense—the lack of consent by the victim. *Id.* at 625. *See also Neitzel v. State*, 655 P.2d 325, 331–34 (Alaska App.1982).

Our holding in *Reynolds* provides the correct rationale for deciding the *mens rea* issue in this case. In cases of sexual abuse of a minor, the state is expressly required to establish a knowing act of sexual contact. Because the broad statutory definition of sexual contact makes it inaccurate to characterize the requirement of knowing conduct as a culpable mental state, AS 11.81.610(b) specifies the culpable mental state that must apply to the circumstances of the offense. Since the definition of sexual contact already requires knowing conduct, it is reasonable to conclude that, under AS 11.81.610(b)(2), the appropriate culpable mental state for sexual abuse of a minor is recklessness with respect to the circumstances of the offense.

Thus, I would hold that AS 11.81.610(b) requires the state to allege and prove that the accused knowingly engaged in an act of sexual contact and that he acted with reckless disregard for the unjustified nature of his conduct. The determination of whether a specific act of sexual contact is justified must be made by reference to AS 11.81.430, which defines the circumstances under which nondeadly force may be used as an incident to parental, custodial and medical care and supervision. The concept of recklessness is governed by the statutory definition of that term.[7] While I recognize that this interpretation requires the state to shoulder the burden of alleging and proving lack of justification in cases involving sexual abuse of a minor, I believe that proof of this element is necessary, because the offense would otherwise fail to specify a culpable mental state. I further believe that this interpretation would be far less burdensome than requiring the state to prove specific intent. In order to establish specific intent, the state will be required to do more than negate the possibility that the accused reasonably believed his conduct to be justified; it will be required to prove that the accused acted with a conscious objective to achieve a specific impermissible result. Only when the state can affirmatively establish the actual purpose of the accused will it be entitled to prevail. It is precisely this type of narrowness that the legislature apparently sought to avoid in its effort to dispense with specific intent as an element of sexual abuse of a minor.

Moreover, interpreting the sexual abuse statute to require recklessness as the applicable culpable mental state would be consistent with the interpretations that the courts of Michigan and Arizona have given to similar statutory provisions, upon which Alaska's statute was based. *See, e.g., People v. Brewer,* 101 Mich.App. 194, 300 N.W.2d 491, 492 (1981) (under M.C.L. § 750.520a(g), sexual contact requires proof of an intentional touching that can reasonably be construed as having been committed for the purpose of sexual arousal or gratification; actual intent need not be proved); *State v. Madsen,* 137 Ariz. 16, 667 P.2d 1342, 1344 (Ariz.App.1983) (under A.R.S. § 13–1410, determination whether the accused acted with an unnatural or abnormal sexual interest must be objectively made on the basis of community standards; actual intent need not be proved).

Finally, interpreting the sexual abuse statute to require recklessness comports with the recommendations of the National Legal Resource Center for Child Advocacy and Protection of the American Bar Association, Young Lawyers Division. Recommendation 1.6 of their report, *Recommendations for Improving Legal Intervention in Intra-Family Child Sexual Abuse Cases* (1982), defines the offense of sexual abuse of a child to include a broad range of physical contact, but expressly excludes from that definition "acts which may reasonably be construed to be normal caretaker responsibilities, interactions with, or affection for a child ...." Although the National Legal Resource Center's recom-

---

7. As with other types of cases involving recklessness as the culpable mental state, I believe that the definition of recklessness contained in AS 11.81.900(a)(3) must apply in cases involving sexual abuse of a minor. AS 11.81.900(a)(3) provides:

> a person acts "recklessly" with respect to a result or to a circumstance described by a provision of law defining an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situa-

tion; a person who is unaware of a risk of which the person would have been aware had that person not been intoxicated acts recklessly with respect to that risk.

Thus, in the context of a case involving sexual abuse of a minor, the prosecution would be required to show that the accused knowingly committed an act within the statutory definition of "sexual contact" and that, in so doing, he consciously disregarded a substantial and unjustifiable risk that the act would not be justified. As specified in AS 11.81.610(c), a showing that the accused acted "intentionally" or "knowingly" would also suffice to establish the culpable mental element of recklessness.

mendation might be construed to require proof of negligence rather than recklessness, I believe that it is otherwise virtually identical to the interpretation of Alaska's sexual abuse statute that I would adopt.

I conclude that there is sound authority favoring an interpretation of the Alaska sexual abuse statutes that would require proof of a reckless disregard for lack of justification as the criminal intent for the offense. As a matter of statutory interpretation, I believe this approach is more tenable than the alternative of requiring proof of specific intent. Accordingly, I disagree with the majority's decision to require proof of specific intent as an element of sexual abuse of a minor.

## II.  HARMLESS ERROR

█ Regardless of whether recklessness or specific intent is adopted as the criminal intent for sexual abuse of a minor, I cannot agree with Judge Singleton's conclusion that the trial court's failure to instruct properly on criminal intent was harmless error. I agree with Judge Singleton that the jury would not have been likely to find an absence of specific intent, knowledge, or recklessness under the evidence presented. However, Flink's jury was never instructed that it was necessary to find that Flink acted with any culpable mental state. Flink certainly did not concede that the jury would be required to find that he acted recklessly or with specific intent if it rejected his version of the offense. Nor was his defense necessarily inconsistent

with a defense based on lack of criminal intent, as, for example, an alibi defense might have been. Finally, this was not a case in which the arguments of the parties effectively required the jury to find *mens rea*. See *J.E.C. v. State*, 681 P.2d 1358 (Alaska App., 1984). *Cf. Reynolds v. State*, 664 P.2d 621, 628 (Alaska App.1983).

In effect, the trial court's failure to instruct the jury on the necessity of finding an appropriate criminal intent deprived Flink of the opportunity to obtain a jury determination of that issue. Since Flink did not expressly concede criminal intent and did not present a defense that was necessarily inconsistent with lack of specific intent or recklessness, I believe that it would be improper to deny Flink his right to a jury determination of that issue, whether recklessness or specific intent is adopted as the appropriate criminal intent for the offense. Regardless of the apparent strength of the evidence against him on criminal intent, Flink is entitled to have a jury determine all of the essential elements of the offenses charged.[8]

Thus I believe Flink's case must be remanded for a new trial on Counts I, III, IV and V.

---

**8.** Judge Coats joins in the conclusion that failure to give an appropriate instruction on intent   did not constitute harmless error.