Dennis R. POTTS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–247.

Court of Appeals of Alaska.

Dec. 20, 1985.

Rehearing Denied Jan. 14, 1986.

As Amended Feb. 11, 1986.

William P. Bryson and Walter Share, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Following a jury trial, Dennis Potts was convicted of attempted sexual assault in the first degree (Count I). Former AS 11.41.410(a)(4) and AS 11.31.100(a). He was also convicted of sexual abuse of a minor (Count II). Former AS 11.41.-440(a)(2). Potts appeals his convictions on several grounds: that the indictment did not provide sufficient notice, that there were constitutional infirmities in jury instructions dealing with mental states for the alleged crimes, and that there was prosecutorial misconduct amounting to reversible error. We affirm Potts' conviction for attempted first degree sexual assault. Because the jury was not properly instructed regarding the culpable mental state, we reverse his conviction for sexual abuse of a minor.

## FACTS

In March 1982, Dennis Potts and his wife separated. Thereafter, their nine-year-old daughter, S.P., lived with her mother except on alternate weekends, when she lived with Potts. In December 1982, S.P. told her mother and Anchorage Police Investigator Clifton Bennett that Potts had molested her. Bennett subsequently interviewed Potts on three separate occasions. These interviews were taped and played for the jury at trial.

During these interviews and in his testimony at trial, Potts conceded certain genital contacts with his daughter, but maintained that some were for medically necessary purposes and that the rest were intended only to satisfy S.P.'s natural curiosity about sex. Potts told Bennett that S.P. had asked him and he had allowed her to touch his penis when he urinated, when he had an erection, and while he masturbated. He explained that these contacts were intended to satisfy S.P.'s curiosity and were educational in nature. Potts also said that he had touched his daughter's genitals, for two reasons only: to apply a vaginal ointment prescribed by a doctor and to wash her in the bathtub. Potts' testimony at trial was generally consistent with these statements.

This testimony directly contradicted that given by S.P., who stated that it had been Potts' idea for her to touch his penis and to masturbate him. She also testified that Potts had "pushed" with his erect penis against her vaginal opening when she was preparing for a bath and that Potts had frequently touched her genitals and breasts. According to S.P., Potts told her that she made him "excited" and "hard."

## I. SUFFICIENCY OF INDICTMENT

■ In a post-trial proceeding and on appeal, Potts challenged the sufficiency of the indictment because it failed to allege that specific intent was an essential element of the crimes charged. We conclude that the failure to allege specific intent expressly does not amount to a jurisdictional defect on the face of the indictment. The recitation of the acts charged in the information and indictment provided Potts with sufficient notice that the acts were believed to be sexually motivated. *Peterson v. State*, 562 P.2d 1350, 1367 (Alaska 1977); *Thomas v. State*, 522 P.2d 528, 530–31 (Alaska 1974); *Harris v. State*, 457 P.2d 638, 640 (Alaska 1969).

## II. JURY INSTRUCTIONS

### A. Sexual Abuse of a Minor

Potts was convicted of sexual abuse of a minor pursuant to former AS 11.41.-440(a)(2), which provided: "[a] person commits the crime of sexual abuse of a minor, if, being sixteen years or older, he engages in sexual contact with a person who is under thirteen years of age." The trial court rejected Potts' proposed instruction, which would have required the jury to find that Potts acted with intent to "sexually arouse, excite or gratify" himself or the victim, or with a reckless disregard to that effect. Instead, the jury was instructed that it must find that Potts acted "knowingly" with respect to the elements of the offense.

1. The potential for prejudice was particularly great here, since the prosecutor did not elect among the multiple acts alleged in the indictment the specific act the state was relying on for conviction. *See Covington v. State*, 703 P.2d 436, 440 (Alaska App.1985) (sexual abuse is not a continuing offense); *State v. Petrich*, 101 Wash.2d 566, 683 P.2d 173, 177 (1984). In this case, the prosecution actually encouraged the jury to select for itself among the various acts alleged in order to find Potts guilty of sexual abuse. Although the state's failure to elect a single, specific act as the basis of its charge might have resulted in a non-unanimous jury verdict of conviction, (*see Covington v. State*, 703 P.2d at 440–41; *James v. State*, 671 P.2d 885 (Alaska App.1983), *rev'd*, 698 P.2d 1161 (Alaska 1985)), Potts did not request an election or ob-

■ In *Flink v. State*, 683 P.2d 725 (Alaska App.1984), we construed former AS 11.41.440(a)(2) to require specific intent as the culpable mental state for sexual abuse of a minor. "[G]enital contact in order to be 'sexual contact' must be intended to result in either the sexual arousal or sexual gratification of the actor or victim." *Id.* at 733. (footnote omitted) (Singleton and Coats, J.J., concurring in part and dissenting in part). In *Flink*, the trial court's failure to instruct the jury on .*mens rea* constituted reversible error. In this case, the state relies on *J.E.C. v. State*, 681 P.2d 1358, 1361 (Alaska App.1984) to argue that the trial court's failure to instruct the jury on specific intent was harmless error. We cannot conclude that the error in this case was harmless beyond a reasonable doubt. In contrast to the circumstances in *J.E.C. v. State*, 681 P.2d at 1361, the prosecutor, in arguing this case to the jury, did not concede that a sexual motive was required for conviction.[1] Furthermore, some of the acts upon which Potts' conviction might have been based were equivocal and conceivably could have been innocently motivated. *Compare with J.E.C.*, 681 P.2d at 1361; *Neitzel v. State*, 655 P.2d 325, 338 (Alaska App.1982).

■ Regardless of the strength of the state's case against Potts, Potts is entitled to a jury determination of all of the essential elements of each of the offenses actually prosecuted. Potts' conviction for sexual abuse of a minor must be reversed.[2]

ject to the multiplicity of acts alleged, nor does Potts argue this issue on appeal. Given the possibility that the failure to request an election was tactical—in order to avoid the possibility of multiple charges—we do not find plain error.

2. Potts alleges that the court's instruction defining "knowingly" violated the state and federal constitutions because it either undermined the state's burden of proof or shifted it to Potts. The instruction read:

A person acts "knowingly" with respect to conduct or to a circumstance described by the law when he is aware that his conduct is of that nature or that the circumstance exists. When knowledge of the existence of a particular fact must be proved by the state, *that*

## B. Attempted Sexual Assault in the First Degree

Potts also raises two distinct challenges to his conviction of attempted sexual assault in the first degree—the attempted sexual penetration of S.P. Former AS 11.-41.410(a)(4),[3] AS 11.31.100(a).[4]

Potts first contends that his conviction must be overturned because neither the indictment nor the jury instructions specified whether the attempted penetration was with his penis or with his hand (while applying medicinal ointment to S.P.'s vagina), and because the trial court erred in refusing to give his proposed instruction, which would have eliminated the possibility of juror confusion as to the particular act for which he was prosecuted.[5]

■ There was no error in the trial court's refusal to give Potts' proposed instruction since the state and defense attorneys had agreed, in the course of argument on jury instructions, that the only act charged as sexual assault was an attempt-ed genital intercourse: when Potts "pushed" his penis against S.P.'s vaginal opening. The parties further agreed that the jury should be instructed that "sexual penetration," as an element of sexual assault in the first degree, AS 11.41.410(a)(4) "means genital intercourse." The prosecution limited its argument on sexual assault accordingly. Given the agreement of the parties on the state's theory of the case and the jury instruction defining "sexual penetration," we conclude there is no realistic possibility of jury confusion on the issue.[6]

Potts separately contends that the failure to give an instruction requiring specific or "sexual" intent for sexual assault violates due process because the statute itself fails to provide adequate notice of what constitutes the prohibited conduct, *i.e.,* "sexual penetration." Potts maintains that in the absence of a specific intent requirement the statutory prohibition could apply to innocent, medically necessary acts of

*knowledge is established if a person is aware of a substantial probability of the existence of the fact, unless he actually believes it does not exist....* [Emphasis added.]
This definition is based on the revised criminal code, AS 11.81.900(a)(2).
Potts argues that a jury finding that a person acted "knowingly" based on a "substantial probability" allows the jury to find guilt based on probability rather than beyond a reasonable doubt, citing *Galauska v. State,* 532 P.2d 1017 (Alaska 1975). Furthermore, he contends the instruction is erroneous because it requires the defense to prove he did not "actually" have knowledge or "[believe] that it did not exist." In Potts' view, the instruction violates due process, and is identical analytically to the instructions condemned in *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and *Kimoktoak v. State,* 584 P.2d 25 (Alaska 1978). Our decision to reverse Potts' sexual abuse conviction and require instructions conforming to *Flink* on retrial makes it unnecessary for us to address these arguments.

**3.** Former AS 11.41.410(a)(4)(b) read, in pertinent part:
A person commits the crime of sexual assault in the first degree if being 18 years of age or older, he engages in sexual penetration with another person who is under 18 years of age and who is his son or daughter ...

**4.** AS 11.31.100(a) reads:
A person is guilty of an attempt to commit a crime if, with intent to commit a crime, he engages in conduct which constitutes a substantial step toward the commission of that crime.

**5.** Potts' proposed instruction read:
If the conduct in this case did not involve sexual intent or recklessness, and the attempted penetrations or contacts were for purposes of bathing, education, or for medicinal purposes, which were not intended to sexually arouse or gratify either the defendant or S.P., then you must acquit. It is the State's burden to prove beyond a reasonable doubt that the defendant's intent was sexual or that he acted recklessly.

**6.** Potts' argument on this issue seems to be premised on the assertion that "genital intercourse" is itself an ambiguous term and could have been interpreted by the jury to include sexual contact between Potts' hand and his victim's genitals. We believe this assertion is without merit. In light of the manner in which the case was presented and argued, we perceive no danger of jury confusion. In context, it is apparent that the only reasonable interpretation the jury could have given to the court's definition of sexual penetration was that the act required attempted contact between Potts' genitals and the genitals of his victim.

penetration by parents and health care personnel. *See* U.S. Const. amend. XIV, § 1; Alaska Const. art. I, § 7. *See also Flink v. State*, 683 P.2d 725, 733 (Alaska App.1984) (Singleton and Coats, J.J. concurring).

 This argument might have merit in some factual circumstances. It has no merit in this case, however, because Potts was tried for an act involving penile contact and the jury was instructed that sexual penetration means "genital intercourse." It is a longstanding rule in this and other jurisdictions that sexual charges based on non-consensual genital intercourse do not require proof of a specific sexual intent. *Walker v. State*, 652 P.2d 88, 91 (Alaska 1982); *Moor v. State*, 709 P.2d 498 (Alaska App.1985); *Cf. Nathaniel v. State*, 668 P.2d 851, 854 (Alaska App.1983). Potts has cited no authority to the contrary.

### III. PROSECUTORIAL MISCONDUCT

 Potts additionally argues that his convictions must be overturned due to improper closing argument by the prosecution. Potts did not object to the prosecutor's remarks when they were made, but raised the issue of misconduct a week after the jury verdict, in a motion for a new trial. Given Potts' failure to object at trial or

move for mistrial before the jury rendered its verdict,[7] no abuse of discretion will be found in the denial of his post-trial motion, absent plain error.[8]

 A plain error is one that is (1) so obvious that it must have been apparent to a competent judge and a competent lawyer even without an objection and (2) so substantially prejudicial that failing to correct it on appeal would perpetuate a miscarriage of justice. *Cf. Carman v. State*, 658 P.2d 131, 137 (Alaska App.1983) (plain error must be obvious and substantially prejudicial). On appeal, then, we consider whether the prosecutor's statements, if in error, constituted such egregious conduct as to "undermine the fundamental fairness of the trial." *United States v. Young*, 470 U.S. ——, ——, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1, 13 (1985). We conclude that the fundamental fairness of Potts' trial was not undermined by the prosecutor's misconduct. Lest we be read as condoning the prosecutor's conduct, we have nevertheless elected to treat the issue at some length.

Potts first argues that the prosecutor at trial improperly offered her own experience as a rape victim in order to inflame the jury's sympathies in favor of the prosecution's case. *See* I ABA Standards for

7. We recognize that experienced counsel may hesitate to object to an improper argument in the presence of the jury for fear of retaliation. Under Alaska practice, Potts had the right to have the jury excused so that any objection to the prosecutor's argument could have been considered without the jury present. One of the purposes of the Plain Error Rule is to prevent parties from gambling on jury verdicts by overlooking errors perceived as harmless in the expectation that a correctable error will not affect the verdict, but might result in a successful appeal if the verdict is unfavorable. It necessarily follows that an objection to an opponent's final argument is timely if it precedes the return of the verdict and a fortiori if it precedes the commencement of deliberation.

8. Alaska R.Crim.P. 47(b) reads: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rationale of the rule requiring a party to make a contemporaneous objection or to move for mistrial prior to

the rendering of a verdict is to allow the court to exercise its ability to correct error. *See Owens v. State*, 613 P.2d 259, 261 (Alaska 1980) (some timely action by the defense is required in order to allow the trial judge to consider whether a mistrial is appropriate or whether cautionary instruction will suffice to counteract jury's exposure to out-of-court publicity or information). *See also Amidon v. State*, 565 P.2d 1248, 1262 (Alaska 1977) (timely objection to prosecutorial misconduct allowed the prosecutor to cure his error in stating his opinion). We recognize that the supreme court has been more willing to find "plain error" in connection with a prosecutor's final argument on the assumption that a trial court's corrective efforts would be less significant at that time. *Padgett v. State*, 590 P.2d 432, 435 (Alaska 1979). *Cf. Williams v. State*, 629 P.2d 54, 59 (Alaska 1981) (failure to object to prejudicial misconduct by prosecutor precludes appellate review only in those cases where timely objection and admonition would have cured prejudice).

Criminal Justice 3–5.8(c) (2d ed. 1980) ("prosecutor should not use argument calculated to inflame the passions or prejudices of the jury"). The state's attorney offered an explanation for the evidence that S.P., the victim, still loved her father, although he had molested her. She contrasted the child's reaction to that of an adult rape victim:

> You know when adult rape victims are raped, their immediate reaction is going to be anger and *I've been a victim.* It's really one of the sorrows of incest, is that she's been molested by her own dad, and she still loves him.... [Emphasis added.]

■ A post-trial affidavit submitted by the trial prosecutor states that she has never been the victim of a sexual assault. In her affidavit, the prosecutor indicates that she was speaking rhetorically in her final argument in the first-person voice of a hypothetical adult rape victim. This rhetorical device referred to matters outside the scope of the evidence presented in this prosecution, *i.e.,* the perceptions of adult rape victims. The statement created a danger that some jurors would mistakenly interpret the remark the same way Potts now does, to be actually describing the prosecutor's own experience. However, in the absence of a contemporaneous objection, we do not find that the prosecutor's statement amounted to error that was so obvious and prejudicial, that it crossed the threshold for a finding of plain error. *United States v. Young,* 470 U.S. at ——, 105 S.Ct. at 1047 n. 14, 84 L.Ed.2d at 13–14 n. 14. We have carefully reviewed both transcribed and electronically-recorded versions of the prosecution's final argument and are convinced that a jury would have understood the remark as rhetorical. Had defense counsel objected to the statement at trial, the prosecutor could have clarified

that she was not referring to her own experience and the trial court could have reiterated prior instructions regarding the jury's duties in evaluating final arguments. We are satisfied that such a concession followed by an appropriate admonition would have eliminated any possibility of prejudice.[9]

■ As a second example of improper argument, Potts charges that the prosecutor improperly argued her personal opinion and belief that Potts was a child molester. The primary danger with this type of argument is that it may suggest to the jury that the prosecutor has information, not disclosed at trial, conclusively establishing the defendant's guilt. In closing, Potts' counsel argued that Potts' prosecution established that anyone who had physical contacts with a child, no matter how innocent those contacts were, might be subject to prosecution by the state. In rebuttal, the state's argument included the following remarks:

> There's enough child molesters around without me worrying about what people are doing in their bedrooms innocently, and certainly that's true for the police officers in this case. We're not here because we went out and sought out this case, and because we like bringing little children into the courtroom to have to testify against their fathers. We're here because there's people like Dennis Potts in the world....

The state argues that any error by the prosecutor was excused by the "invited response" rule. The "invited response" or "invited reply" rule was developed to aid a court's analysis in determining whether a "plain error" existed where the defense had argued improperly, the prosecutor responded in kind and no defense objection is interposed. *United States v. Young,* 470 U.S. at ——, 105 S.Ct. at 1044–45, 84

9. We note that argument in the first-person voice of the victim or argument otherwise placing the prosecutor in the shoes of the victim may, under certain circumstances, constitute reversible error, and we advise against its use. *See, e.g., Hawthorne v. United States,* 476 A.2d 164, 172 (D.C.1984). However, the prosecutor's

remarks here do not indicate that she was speaking as the victim's personal representative. Moreover, the rhetorical device she employed was intended to interpret facts in evidence, *i.e.,* why S.P. still loved her father despite alleged acts of sexual abuse.

L.Ed.2d at 8–11, discussing *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

Defense counsel's remarks went beyond facts in the record. He argued that the state needed to prove no more than inadvertent physical contact between a father and child to initiate a prosecution for sexual crimes and suggested that if this prosecution succeeded other prosecutions "may well intrude into everyone's household." Nevertheless, "two wrongs do not make a right." As noted in *United States v. Young*, 470 U.S. at ——, 105 S.Ct. at 1042, 84 L.Ed.2d at 7, "the principal issue to be resolved is not whether the prosecutor's response to defense counsel's misconduct was appropriate, but whether it was 'plain' error that a reviewing court could act on absent a timely objection."

An assertion of personal opinion or belief in the credibility or culpability of a party is an ethical breach if made by either attorney. Model Code of Professional Responsibility DR 7–106(C) (1981). "Expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office...." I ABA Standards for Criminal Justice 3–5.8(b) comment (2d ed. 1980). As the Supreme Court has explained:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. at ——, 105 S.Ct. at 1048, 84 L.Ed.2d at 14. (citation omitted).

■ In *Young*, the United States Supreme Court considered a rebuttal argument in which the prosecutor said that he believed the defendant had intended to commit fraud. The Supreme Court found no plain error, however, because the prosecutor made it clear that he was stating his opinion "because it was asked of me [by defense counsel]." Defense counsel had argued that "there's not a person in this courtroom including those sitting at this table [gesturing to the prosecution's table] who think that Billy Young intended to defraud...." 470 U.S. at ——, 105 S.Ct. at 1041, 84 L.Ed.2d at 6. Furthermore, the prosecutor did not in any way suggest that he was relying on information outside the evidence presented at trial, and he additionally "supported his comment by referring to respondent's own testimony." 470 U.S. at ——, 105 S.Ct. at 1048, 84 L.Ed.2d at 14. Although the court characterized the statement as error, it also found that the "potential harm from this remark was mitigated by the jury's understanding that the prosecutor was countering defense counsel's [arguments]." 470 U.S. at ——, 105 S.Ct. at 1048, 84 L.Ed.2d at 14. The argument in the instant case is quite similar to the one considered in *Young* and does not, standing alone, constitute plain error.

■ Potts asks that we consider additional statements in connection with the alleged misconduct. For example, the following:

> [THE PROSECUTOR]: There's nothing that says you have to like Dennis Potts. You can like him and convict him, you can dislike him and convict him. *I hope you do dislike him; you ought to for the kind of person he is.* And frankly, if you're going to convict him of sexual abuse of a minor and attempted sexual intercourse with his daughter, you probably are not going to like him very much. That's okay. I mean, *most people don't like child molesters* .... [Emphasis added.]

The prosecutor's remarks could be read as going beyond "the standard argument that the police have no motive to lie or to want to convict an innocent man." *Jackson v. State*, 652 P.2d 104, 110 (Alaska App.1982). However, such passing comments, while objectionable, were not so egregious that a timely objection followed by an appropriate admonition would not have cured the error.

Perhaps even more problematic are other remarks made by the prosecutor which were clearly not invited by improper defense argument. In her rebuttal argument, she stated:

> It's really one of the sorrows of incest, is that she's been molested by her own dad, and she still loves him, and *she wants him to get some help*, and she had to come in here to do it, *because he's not willing to get help on his own. The jury verdict is about the only way that he'll get it*, because it's the only way that any of us are going to convince Dennis Potts he's committed incest. [Emphasis added.]

As Potts interprets it, this argument in effect constituted a request for the jury to reach a guilty verdict based on irrelevancies and facts outside of the record, *i.e.*, that Potts had refused to receive psychological treatment and that he would receive "help" if he is convicted. As such, he contends this argument amounts to an improper exhortation to the jurors to "do their job" and convict the defendant. *See United States v. Young*, 470 U.S. at ——,

105 S.Ct. at 1054, 84 L.Ed.2d at 22. (Brennan, J., concurring in part) ("[m]any courts historically viewed such warnings ["to do their job"] as among the most egregious forms of prosecutorial misconduct"). Moreover, Potts continues, this argument violated the ethical rule disallowing argument on the consequences of a verdict. I ABA Standards for Criminal Justice 3–5.-8(d) (2d ed. 1980). *See Anderson v. State*, 384 P.2d 669, 674 (Alaska 1963).

■■ One additional aspect of this argument concerns Potts: the state argued that S.P. "had to come in here [to trial], because [Potts is] not willing to get help on his own." In Potts' view, this clearly amounts to a comment on Potts' motive for exercising his right to a trial. By implying—without any evidentiary support—that Potts' refusal to get help was the reason a trial was necessary, the prosecutor's argument, Potts concludes, impermissibly infringed on Potts' constitutional right to insist that his guilt be established at trial. We view the two foregoing remarks by the prosecutor as improper and uninvited. Yet, bound by the strictures of the plain error rule, Alaska R.Crim.P. 47(b), we do not find that the remarks constitute reversible error.

■■ In concluding that plain error has not been established, we do not mean to discount the impropriety of a prosecutor's expressions which might be construed as a personal opinion of the guilt of the defendant or an argument relating to a defendant's need for treatment.[10] Had Potts

10. The prosecutor may have been replying to a part of the defense argument in which it was contended that nine-year-old S.P. was the victim of brainwashing by her mother and others and her testimony merely the result of her mother's coaching. It was the defense theory of the case that S.P.'s mother, Pott's former wife, and S.P.'s aunt were extremely sexually repressed to the point of emotional illness and viewed Pott's normal sexual urges and desires with a horror bordering on pathology. In Pott's view, S.P.'s mother and aunt communicated their abnormal sexual fears about Potts to S.P., accounting for S.P.'s testimony. Defense counsel stated:

> Her words "I want to get help for him," "He has a problem," "It's not nice." Were they [S.P.'s] words, or were those words that came about in that home, in that educational process, in the setting in which she was in?

Those aren't the words of a nine-year-old, and it may well be that she's a victim of a cruel hoax here; that they told her that her father needed help, that those pictures were dirty, that those things were not nice, and they may—you know, it may have indeed caused an emotional breakdown to realize that the daughter may have learned about sex or may have seen her father masturbate, grounds for divorce in this courtroom.

> \* \* \* \* \* \*

> [S]he's frightened and she doesn't remember. I submit, ladies and gentlemen, in this case that's something you should look at as to whether or not to rely on her. I mentioned the fact that she can be led, that a lot of the questions were not things that she volunteered. They were things that she was re-

made a timely objection and the trial court refused to sustain it and admonish the jury, or had the prosecutor proceeded in the face of proper objections, reversal might be warranted. Potts, however, was represented at trial by an eminently qualified defense lawyer who has many years' experience defending felony criminal cases. The defense presented was vigorous and defense counsel evidenced a mastery of the facts and the law. The prosecutor's comments, however unfortunate, were made in passing, and, when we consider the totality of her argument, were ambiguous. While a jury *might* have understood them as Potts now argues, on the other hand the jury could well have understood her to be saying that, viewing only evidence properly before the jury, the state had proved beyond reasonable doubt that Potts was a child molester and that the only appropriate "treatment" for a proven child molester was a jury verdict of guilty. On balance, we are convinced that it is unlikely a lay jury understood the comments as Potts contends. Given defense counsel's experience and understanding of criminal law, it seems likely that the failure to object was tactical and evidenced counsel's belief that the prosecutor's emotional response did not harm Potts but rather confirmed the defense theory that Potts was the victim of

an irrational witch hunt. Defense counsel may have reasoned that the comments were harmless to Potts' defense and if ignored might be issues on appeal in the event of a conviction.[11] Given Potts' devastating admissions, this was probably his most effective defense. Where experienced trial counsel, who bears the heavy burden of defending his client, does not consider an error of sufficient moment to warrant an objection, we hesitate to find plain error, particularly where, as here, we are satisfied that a timely objection would have resulted in concessions and an admonition which would have cured any error.[12]

We acknowledge that trials involving charges of child abuse will inevitably be emotionally charged, given the vulnerability of the victim, the feelings of the community and the nature of the proof, particularly when family relationships are under intense scrutiny in a public forum. We caution that under such circumstances, it is especially important that the prosecutor refrain from overzealous conduct, such as comments which might be construed as a personal belief in the defendant's guilt or as to the credibility of the witnesses. Moreover, trial judges must be vigilant to prevent such conduct in their courtrooms. I ABA Standards for Criminal Justice 3–5.-

---

minded of. Late in the going we were told that her earlier Grand Jury testimony in which she didn't have anyone cross-examine her, and she didn't have Mr. Potts in the courtroom, and she only had the people that she had talked to that day, that had been played for her the day before so that she would know in case she didn't remember, what they wanted her to say.

Viewed as a response to this argument, the prosecutor is merely saying that S.P.'s reference to treatment was the natural response of a child exposed to Potts' crime and not the result of words being placed in her mouth by her mother and aunt.

11. If an error is so obvious and so prejudicial that an appellate court should recognize it as "plain error" on appeal, experienced, competent trial counsel should recognize it and seek its correction in the trial court by a timely objection. A finding of plain error is therefore virtually the equivalent of a finding of ineffective assistance of counsel. Rarely will one exist in the absence of the other. Rarely will either be

found if counsel's actions were in fact tactical. *See Barry v. State,* 675 P.2d 1292, 1294–95 (Alaska App.1984).

12. In *Clemans v. State,* 680 P.2d 1179, 1186 (Alaska App.1984) we stated:

We have previously held that a finding of plain error will normally be inappropriate where the defendant's failure to object might have been tactical. Our reluctance to find plain error in such cases stems in part from the need to assure that a party who seeks to gain an advantage by choosing to withhold an objection is not permitted to adopt an inconsistent strategy after the initial one fails. Furthermore, we believe that the willingness of a party to forego an objection in order to gain a tactical advantage provides a reliable indication that, in the perception of that party, the failure to object was not likely to result in serious prejudice. Finally, a party's decision not to make a timely objection precludes the trial court from taking measures to correct possible error.

8(e) (2d ed. 1980). We particularly condemn arguments based not on evidence of guilt but on the generalized antipathy the jury is likely to feel toward sex offenders as a class. While a prosecutor may "strike hard blows" in prosecuting a defendant who is charged with victimizing young children, the prosecutor "is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935).

Potts' conviction of attempted sexual assault in the first degree is AFFIRMED, his conviction of sexual abuse of a minor is REVERSED.

BRYNER, Chief Judge, dissenting.

In rebuttal to the closing argument of Potts' counsel at trial, counsel for the prosecution personally assured the jury that Potts was guilty. She informed the jury of her personal belief that the victim, S.P., was telling the truth. Urging the jury to base its decision on its sympathy for the victim and its dislike of Potts, the prosecutor emphasized that she personally hoped the jury did dislike Potts. She went on to state, "You ought to for the kind of person he is." The prosecutor went on to propose that the jury convict Potts "because he is a child molester." Then, after reassuring the jury that the state and the police do not prosecute innocent people and that Potts was a sick man who needed help, the prosecutor intimated that it had been necessary to bring Potts to trial only because he refused to get help on his own. The upshot of the argument, of course, was to encourage the jury to help Potts by convicting him.

The majority of the court apparently acknowledges the impropriety of the prosecution's rebuttal but concludes that the error was neither substantial nor obviously prejudicial. I respectfully disagree.

Three arguments are advanced by the majority in attempting to justify its conclusion that the state's rebuttal, while error, was not plain error. First, the majority intimates that the state's improper remarks were mere passing comments, unlikely to influence the jury. Second, it speculates that Potts' counsel, an experienced criminal attorney, failed to object for tactical reasons. Third, it attempts to explain its conclusion by invoking the doctrine of invited reply. I would reject the majority's first two arguments out of hand. Its third argument should be rejected as a matter of law.

It makes little sense to suggest, as does the majority, that the prosecutor's improper comments were passing in nature and unlikely to influence the jury. The improper rebuttal argument best speaks for itself.[1] This argument, ably and effectively delivered, was eloquent in its impropriety. From all appearances it was intended to influence the jury's deliberations and verdict. Presumably it did.

It is, furthermore, difficult to believe that the defense counsel's failure to challenge the state's improper rebuttal resulted from a tactical decision to forego an objection. I can conceive of no plausible explanation for the failure to object other than a desire to avoid antagonizing the jury by interrupting the state's rebuttal. Yet solicitude for the jury cannot account for the lack of an objection here. Had Potts' counsel been fearful of arousing the jury's ire by interrupting the rebuttal, he could readily have asked to be heard outside the jury's presence after the prosecutor concluded her remarks. Beyond cavil, such an objection would have been deemed timely.[2] Under the circumstances, it seems fairly obvious to me that the defense counsel in this case simply failed to recognize the prosecu-

---

**1.** I have attached the entirety of the prosecution's argument on rebuttal as an appendix to my dissent.

**2.** *Cf. United States v. Young*, 470 U.S. ——, ——, 105 S.Ct. 1038, 1045–46, 84 L.Ed.2d 1, 11 (1985) (indicating that the proper time for objection to improper final argument, by either the prosecu-

tion or the defense, is at the conclusion of the improper argument). *See also Williams v. State*, 629 P.2d 54, 59 (Alaska 1981) (objection to statement made by counsel during jury voir dire deemed sufficiently timely to permit review when made on the day after the challenged remark).

tion's error. The fact that Potts was represented by experienced counsel—far from indicating a tactical decision to bypass an objection—only underscores the appropriateness of finding plain error.

Finally, I think the majority's reliance on the doctrine of invited reply is problematical on both legal and factual grounds. I have serious misgivings about the wisdom of the invited reply doctrine. Its practical effect is to disregard and thereby encourage a profoundly subversive form of prosecutorial misconduct, the impact of which is invariably difficult to gauge with accuracy.[3] I find Justice Brennan's dissenting opinion in *United States v. Young*, 470 U.S. ——, ——, 105 S.Ct. 1038, 1049–57, 84 L.Ed.2d 1, 16–25 (1985), to be particularly convincing. I would therefore favor categorically rejecting the invited reply doctrine.

Indeed, unless I misread the decision in *Williams v. State*, 629 P.2d 54, 59–60 (Alaska 1981), the Alaska Supreme Court has already taken a substantial step in this direction. Speaking of the invited reply doctrine, the court in *Williams* said:

> Moreover, we are reluctant to approve any rule which encourages unprofessional conduct by prosecutors as retaliation. We agree with the Tenth Circuit, which has held:

> > We can give no comfort to the proposition that unprofessional conduct upon the part of defense counsel opens the door to similar conduct by government counsel. The government's remedy, of course, lies with proper objection made to the trial court during the course of the trial.

> *United States v. Ludwig*, 508 F.2d 140, 143 (10th Cir.1974) (footnote omitted). *Accord People v. Bain*, [5 Cal.3d 839, 97

Cal.Rptr. 684] 489 P.2d 564, 569 (Cal. 1971).

*Williams v. State*, 629 P.2d at 59–60 (footnote omitted).[4]

Yet even if the doctrine of invited reply remains intact, it would not insulate the prosecution's improper argument in this case. At most, the invited reply doctrine allows the prosecution to neutralize improper defense arguments. It does not license improper affirmative attacks. *See Williams v. State*, 629 P.2d at 59. Potts' defense counsel, in his closing argument to the jury, questioned the state's good faith for prosecuting Potts and speculated that Potts' former wife had influenced Potts' daughter, S.P., to commit perjury. This argument—while plainly improper because it was made without any discernible evidentiary foundation—cannot fairly be said to have "invited" an improper response directed at Potts' ostensible need for treatment or his purported unwillingness to obtain treatment. Neither can it be said to have invited a gratuitous and wholly unsubstantiated comment implying that Potts' refusal to seek treatment was the real reason it was necessary to have a jury trial.

I am particularly troubled by the prosecutor's comment on Potts' decision to exercise his right to a trial:

> It's really one of the sorrows of incest ... that she's been molested by her own dad, and she still loves him and she wants to get him some help, and *she had to come here to do it, because he's not willing to get help on his own.* The jury verdict is about the only way that he'll get it, because it's the only way that any of us are going to convince Dennis Potts he's committed incest. [Emphasis added.]

**3.** As Aristotle said, "If you want to excite prejudice you must do so at the close, so that the jurors may more easily remember what you said." Aristotle, *Rhetoric*, Book III, Chap. 14, *cited in United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 642 n. 2 (2d Cir.1946) (Frank, J., dissenting).

**4.** In retrospect, the Alaska Supreme Court's approval of the Tenth Circuit's decision to reject

the invited reply doctrine seems particularly ironic, given that the United States Supreme Court's decision in *United States v. Young*, which, in resurrecting the invited reply doctrine, reversed a decision of the Tenth Circuit. *See United States v. Young*, 736 F.2d 565 (10th Cir.1983), *rev'd. United States v. Young*, 470 U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

This argument in effect constituted a request for the jury to reach a guilty verdict based on facts outside the record, namely, the implication that Potts had refused to receive psychological treatment but would receive such help if convicted. This amounted to an improper exhortation to jurors to "do their job" by convicting the defendant. *See United States v. Young,* 470 U.S. at ——, 105 S.Ct. at 1054, 84 L.Ed.2d at 22 (Brennan, J., concurring & dissenting).

Moreover, this argument violated the ethical rule against comment on the consequences of a verdict. I ABA Standards for Criminal Justice 3–5.8(d) (2d ed. 1980). *See Anderson v. State,* 384 P.2d 669, 674 (Alaska 1963). It amounted to a plea for the jury to convict Potts not on the sole basis of the evidence, but rather on his ostensible need for help, his purported reluctance to get it on his own, and its presumed availability upon conviction. In essence, this argument telegraphed the message that Potts' need for treatment, not his guilt or innocence under the evidence, was the true issue for the jury.

Especially pernicious, however, was the prosecutor's argument that S.P. "had to come here [to trial], because [Potts is] not willing to get help on his own." This statement could easily be interpreted as a comment on Potts' motives for exercising his right to a trial. It clearly implied—without any evidentiary support—that a formal prosecution and trial were necessary because of Potts' own recalcitrance. I believe this implication clearly impinged on Potts' right to insist that the state bear its burden of establishing his guilt beyond a reasonable doubt. Hardly a passing or obscure reference, the remark in effect penalized Potts for deciding to exercise his constitutional right to a jury trial. *Cf. Elson*

*v. State,* 659 P.2d 1195 (Alaska 1983) (disapproving comment on refusal to relinquish fourth amendment rights); *Dorman v. State,* 622 P.2d 448, 457–58 (Alaska 1981) (disapproving comment on the exercise of the right to remain silent).

Upon due reflection, I would conclude that this final portion of the prosecutor's rebuttal was, in itself, sufficient to amount to plain error. Accordingly, I dissent.[5]

### APPENDIX

### REBUTTAL ARGUMENT OF PROSECUTION

[THE PROSECUTOR]: I was prepared, after listening to the beginning of [Defense Counsel's] closing argument, to make an extensive rebuttal argument. I felt that from the way he started, I should start getting out my pen and making a list, and making a list of inaccuracies in my argument, making a list of multiple contradictions in [S.P.'s] testimony, making a list of all the evidence that supported his theory that this child was influenced by relatives, a police [officer], and a prosecutor to lie in front of a grand jury and a trial jury. And I was prepared to answer those propositions. My rebuttal will be very short. And that's because most of what [Defense Counsel] said, although a very fine American Civics lecture, didn't have anything to do with the evidence in this case.

He mentioned no inaccuracies in my argument, his anger seemed a little bit out of place. He mentioned no substantial contradictions in [S.P.'s] testimony. You never heard anybody come in here and say "[S.P.] told me her father never molested her." If she'd said that, yes, I would be troubled, and I would have some explaining to do. But that never happened. The child from

---

**5.** I must emphasize that, in characterizing the prosecution's rebuttal in this case as amounting to plain error—*i.e.,* as being obviously improper and prejudicial—I do not intend to imply a personal belief that the impropriety was deliberate. There is little in the record to indicate an intentional effort to prejudice the defendant by making an improper rebuttal argument. I am convinced that the most likely explanation for the impropriety of the final arguments of both trial counsel in this case is simply their failure to appreciate the ethical constraints that govern presentation of final argument in a criminal case. Regardless of whether the misconduct was deliberate or inadvertent, its effect on the fairness of the jury's deliberations was, of course, the same.

the very beginning has remained consistent about the general type of things that her father did to her sexually, and she's never changed from that. No points were made with her on cross-examination that were not explained upon redirect examination. And so I have nothing to respond to.

I can tell you, however, that [Defense Counsel] and I disagree a little bit about whether or not you can bring your emotions into the jury deliberations. There's nothing in the Judge's instructions that says you can't have honest, human feelings in this case. There's nothing that says that you have to like Dennis Potts. You can like him and convict him, you can dislike him and convict him. I hope you do dislike him; you ought to for the kind of person he is. And frankly, if you're going to convict him of sexual abuse of a minor and attempted sexual intercourse with his daughter, you probably are not going to like him very much. That's okay. I mean, most people don't like child molesters, ladies and gentlemen of the jury, and I'm sure [Defense Counsel] wouldn't expect you to like them.

Now of course we're not arguing that just because Dennis Potts is a rotten parent you should convict him. We're saying you should convict him because he's a child molester. And you can certainly disapprove of him after you reach your verdict.

And there's also certainly nothing wrong with liking [S.P.], and with finding sympathy for her. Anybody would. She's a child molest[er's] victim. Most people do feel sympathy for children who are molested by their fathers. Certainly your sympathies shouldn't keep you from seeing whether or not [S.P.'s] testimony supported the charges. But there's nothing wrong with liking her better than him. And there's nothing wrong with taking that feeling into the jury room. And keep this in mind, there's nothing wrong with each and every one of you remembering how you felt when [S.P.] finished her testimony. There's nothing wrong with feeling "I believed her. I feel sorry for her. I'm sorry she has to be here, and I'm really sorry her dad did

molest her," and there's nothing wrong with that, because those feelings that you had when [S.P.] was testifying, [are] what tells you now that she was telling the truth.

I asked you in the opening statement to look at how she testified, watch the expressions on her face, listen to her voice. Watch how she handles the sexual matters, look at everything about her testimony, and try and evaluate her credibility. And some of you no doubt, came away with a firm belief by the time [S.P.] finished testifying, that you believed her. Remember that belief, explain to your fellow jurors what it is about her that made you believe it, and you'll reach the just and true verdict in this case, which is guilty as charged.

[Defense Counsel's] theory of this case is that this child is lying. That's all it is. She's lying. Why is she lying? She's lying because her mother made her lie. She's lying because, although she was really only upset about porno magazines, her mother convinced her to create an incest story, and to come before a grand jury and trial jury and testify under oath falsely. And her mother did that because she really wanted to stop visitation, and this was the only way she could stop it, and her mother had sexual hangups and she really hated Dennis Potts, and she was out to get him, and she used her daughter to get him.

Well, it's a very fine theory; there's no evidence. Not a shred of evidence. If [Defense Counsel] wanted to get evidence on that, all he had to do was ask questions of Mrs. Potts. If he was actually going to try to prove it, why didn't he ask her questions? Why? Because he knew there wasn't any evidence like that out there. He knows that's a cooked up, trumped up theory, with nothing to back it up.

You've heard no evidence that [the] child was improperly influenced to report this crime at all. Not by me, not by [the police officer], not by her mother. And you certainly didn't hear it from [S.P.]. She didn't say that the only time he ever did anything sexual was the last weekend and it all had to do with magazines. She said from the

very beginning [that] ... he was molesting her, and she told in great detail how that happened. There's no evidence that [the] child was influenced by anybody. And if he wanted to find out if she was, and if she's so easy to lead in getting her to say what you want her to say, why didn't he ask her if anybody had influenced her to testify this way? You know why. Because it didn't happen.

[Defense Counsel] says he's going to testify and ask the jury's forgiveness for this being a child molesting case. "Please, please, there may be an injustice done here, because I made a tactical error. I didn't cross-examine the victim." Do you really believe that a man with the skill that he has, could not have gently cross-examined the victim and got every point he wanted to make, if he really felt there [were] any points to make by further questioning? Of course not. When he questioned her, he was a perfect gentleman. I don't think anybody here took offense at what he said, and on redirect she told what the facts were. Nobody took offense at that. We were all prepared not to take offense at that. So why didn't he question her? Because he had the answer, that's why; not because he was trying to be easy on her. Yes, don't hold any remiss on his part against his client, but my goodness don't hold [it] against us either. Don't speculate about what [Defense Counsel] could have asked; don't speculate about what he may have asked Mrs. Potts if he [weren't] such a gentleman.

Wrong, ladies and gentlemen. Reasonable doubt is not based on speculation. Reasonable doubt is not based on some theory that any of us can cook up about what happened. Reasonable doubt is based upon evidence and common sense; that's what it's based on, and if he wanted to argue a theory like that, he should have got[ten] it in the record, and he should have asked questions, and he should have established it, but he didn't. Not even his own client testified about it. His client was practically a prosecution witness in this case, ladies and gentlemen. Certainly his confessions and his statements were.

He didn't have any evidence, and he doesn't have it now. And don't speculate about what the evidence could have been.

And based on his theory, ... he could have just as easily gotten up here and argued something like this: Well, [S.P.] was not molested by her father, she was really molested by her grandfather, but her grandfather, who is a man of cunning, skill and courage, told her "don't say it was me, say it was your dad, in case it ever comes out. You know if you start getting in trouble by it and everything, if your mother ever asks, you know, say it was dad instead of me, and that's what really happened, and that's how the whole story got cooked up."

Ladies and gentlemen, that theory has just about as much basis in the evidence as the one he argued.

You don't have any evidence that Mrs. Potts improperly influenced that child. You saw Mrs. Potts, you saw what a fine lady she appears to be, and you saw what kind of a guy he is, not [Defense Counsel], please don't let it be thought I'm pointing at him; definitely it's his client; and you ask yourself, do you really believe that stuff? That Mrs. Potts would put her daughter through what she went through in this trial? That [her] aunt wasn't there for coaching? Did you see [the] aunt say anything to her? Did you see her do anything but be there for moral support? No.

[Defense Counsel] would have you believe that the District Attorney's office is operating a sexual gestapo in the State of Alaska. That we are out here to make sure that everybody who does innocent things with their children are prosecuted, and maybe, when will we start checking into your background ladies and gentlemen of the jury, maybe we ought to start checking on everybody's, and we're just out to find people guilty, and we're just out here to put innocent people on trial.

Believe me, I've got enough to do without doing that. There are enough child molesters around without me worrying about what people are doing in their bed-

rooms innocently; and certainly that's true for the police officers in this case. We're not here because we went out and sought out this case, and because we like bringing little children into the courtroom to have to testify against their fathers. We're here because there [are] people like Dennis Potts in this world.

You said something else in voir dire that I'd like to remind you of, which was that none of you have a problem believing that people like him exist. There are actually people that walk the face of the earth that molest their own daughters; and all of you said you don't have a problem accepting that. Ladies and gentlemen, gaze on the face of a man who's just that kind of a person. And you know he is from the way he responded to questions on cross-examination, and you know that [S.P.] was telling the truth. And you know when he says he molested her for sexual treatment, medical treatment, you know that's a pure and simple lie. The child said that's not why it happened. You know why she didn't remember the cream; because the cream is totally innocent, it didn't have anything to do with what her dad was doing. It didn't have anything to do with what her dad was doing to her, which wasn't nice, which showed that her dad had a problem, which showed that he needed help.

Ladies and gentlemen of the jury, most people would not find it incredible that [S.P.] still loves her father, if you know how children think. Probably most of you, unlike [Defense Counsel], did not find it incredible that that child's first reaction—one of the first reactions to the police officers was, "I just want dad to get some help."

You know when adult rape victims are raped, their immediate reaction is going to be anger, and I've been a victim. It's really one of the sorrows of incest that she's been molested by her own dad, and she still loves him, and she wants him to get some help, and she had to come in here to do it because he's not willing to get the help on his own. The jury verdict is about the only way that he'll get it; because it's

the only way that any of us are going to convince Dennis Potts he's committed incest.

One thing that didn't surprise me about [Defense Counsel's] opening statement, or closing argument, is that he called [S.P.] a liar. He didn't come right out and call her a liar, but that's what he called her. Let's remember what the defendant said about his daughter, and whether she's telling the truth. Is she lying? Dennis Potts doesn't think so. He said she's telling the truth about what I did; he says he doesn't think he did anything wrong; he doesn't think there's anything wrong with "doing the things I did," but she's told the truth about what I did.

You're never going to hear more evidence than you heard in this case; it's going to be a rare jury that listens to a child molesting case with a confession. But it's that statement, and the statements of the man on the witness stand, that proves he's guilty. If Dennis Potts doesn't think she's lying, why should you say she's lying by acquitting him? You should find him guilty, because he thinks he's guilty too.

Thank you.