Mark D. ANDERSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10776.

Court of Appeals of Alaska.

Nov. 23, 2012.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Mark D. Anderson was convicted of ten counts of second-degree sexual abuse of a minor,[1] based on evidence that Anderson engaged in multiple instances of sexual contact with three different victims, each under the age of eleven.

Anderson now appeals these convictions on three grounds: (1) that the trial judge improperly restricted the public's access to his trial; (2) that the trial judge committed error by failing to instruct the jurors that they had to unanimously agree on what conduct formed the basis for each conviction; and (3) that the evidence was insufficient to support the counts involving one of the children, G.B.

In addition, Anderson challenges his composite sentence, arguing that it is mistakenly severe.

Finally, Anderson argues that the trial court committed error by charging him the full fee for his court-appointed counsel, when Anderson was represented by private counsel at trial and did not receive court-appointed counsel until his sentencing.

For the reasons explained here, we affirm Anderson's convictions and his sentence, but we remand his case to the superior court for reconsideration of the attorney's fee.

*Anderson's argument that the trial judge improperly restricted public access to his trial*

■ Anderson contends that the trial judge improperly restricted the public's access to his trial during the testimony of the three child victims.

Just before the presentation of evidence began, the trial judge proposed restricting access to the courtroom while the children were testifying, to avoid interruptions or distractions during the children's testimony, and to provide the children with a "consistent environment". The judge acknowledged that Anderson was entitled to a public trial, and she did not clear the courtroom while the children were testifying. Instead, she had court personnel post a "closed hearing" sign on the courtroom door, so that no additional people would enter the courtroom while the three children were on the stand.

Although Anderson now challenges the trial judge's action, his attorney explicitly agreed to this procedure at the time. When the trial judge suggested the procedure described in the preceding paragraph, she asked the parties for their response. Anderson's attorney concurred in the judge's proposal. He told the judge that this procedure "sound[ed] reasonable".

■ Accordingly, we conclude that this situation is governed by the doctrine of "invited error". The doctrine of invited error applies when a court takes improper action at the express request of a party, and then, on appeal, the party seeks reversal of the court's judgement on the basis of that action.[2]

■ When an error is invited, an appellate court will still review the claim of error, but the claim of error is evaluated under a stricter standard than the "plain error" test that applies to claims of error that were simply not preserved in the lower court. In cases of invited error, an appellate court will examine the record to see if, because of exceptional circumstances, reversal "is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice".[3] If not, the claim of error will be

---

1. AS 11.41.436(a)(2).

2. *Roderer v. Dash,* 233 P.3d 1101, 1114 (Alaska 2010).

3. *Ibid.*

rejected. As our supreme court has explained, "The invited error doctrine does not prohibit appellate review, but rather embodies the notion that errors that are invited are less worthy of consideration by an appellate court than those where a party merely fails to object."[4]

In Anderson's case, it is not clear that the judge's action was, in fact, error. As we have explained, the judge did not forbid the public from attending these portions of Anderson's trial, in the sense of clearing the courtroom of all spectators while the children were testifying. (The record shows that non-participants were, in fact, present in the courtroom during the children's testimony.) Rather, the judge posted a sign on the outside of the courtroom door to prevent *additional* people from entering the courtroom in the middle of the children's testimony.

Both the Sixth Amendment to the United States Constitution and Article I, Section 11 of the Alaska Constitution guarantee the right to a public trial in criminal cases. But a trial judge can place reasonable limitations on the public's access to criminal proceedings without offending this constitutional guarantee. See, for example, *Bell v. Evatt*, 72 F.3d 421, 433 (4th Cir.1995), where the court declared that a "temporary limitation of ingress and egress to the courtroom to prevent disturbance of the proceedings" does not offend the defendant's right to a public trial.

Even under the less restrictive "plain error" test, the party claiming error must show that the trial judge's action was *obviously* improper.[5] Here, it was not. The propriety of the trial judge's action might be debatable, but that action was not obviously improper. And as we explained in *Simon v. State*, 121 P.3d 815, 820 (Alaska App.2005), "If a claim of error is reasonably debatable—if reasonable judges could differ on what the law requires—then a claim of plain error fails." Accordingly, we reject Anderson's claim of error.

*Whether Anderson was prejudiced by the trial judge's error in failing to instruct the jurors that they had to unanimously agree on the conduct underlying each of Anderson's convictions*

Anderson was charged with eleven counts of sexual abuse of a minor, and he was convicted of ten of these counts. In Counts 2 through 5, Anderson was convicted of engaging in sexual contact with G.B. In Counts 6 through 11, Anderson was convicted of engaging in sexual contact with two half-sisters from a different family, K.M. and A.K. (The jury acquitted Anderson of Count 1, which was another count involving G.B.)

As is often true in prosecutions for sexual abuse of a minor, the three victims in this case each testified that Anderson engaged in sexual contact with them on numerous occasions, and several of the charges against Anderson encompassed many months of alleged sexual activity.

Anderson's trial judge neglected to instruct the jurors that, with respect to each count, they could not convict Anderson unless they unanimously agreed on the particular conduct underlying that count. Anderson's attorney did not request such a unanimity instruction, nor did he object to the judge's omission. But now, on appeal, Anderson contends that the lack of such an instruction constitutes plain error.

The trial judge's failure to give this kind of unanimity instruction was obvious error. Alaska law clearly requires jury unanimity on this aspect of a sexual abuse charge. See *Covington v. State*, 703 P.2d 436, 440–41 (Alaska App.1985). But to prevail in this claim of plain error, Anderson must show (1) that his attorney had no tactical reason to refrain from bringing this problem to the trial judge's attention, and (2) that the absence of a factual unanimity instruction prejudiced the fairness of the proceedings to

---

4. *Parson v. Dept. of Revenue, Alaska Housing Finance Corp.*, 189 P.3d 1032, 1038 (Alaska 2008).

5. *See Adams v. State*, 261 P.3d 758, 771 (Alaska 2011) (when a party claims "plain error", the party must show that the error prejudiced their substantial rights, and that the error was "obvious").

such an extent as to create manifest injustice.[6]

*(a) Whether Anderson has shown that his attorney had no tactical reason for failing to object to the omission of a "factual unanimity" instruction*

The State does not argue that Anderson's attorney made a tactical decision to keep silent about the omission of a "factual unanimity" instruction. Nevertheless, Anderson's attorney potentially had a tactical reason for refraining from bringing this omission to the judge's attention.

As we are about to explain in more detail, Anderson's defense at trial was that no improper touchings had occurred—that he was factually innocent of all the charges. Anderson's attorney argued to the jury that none of the three children were telling the truth when they asserted that Anderson had abused them. The defense attorney contended that all of the children's accusations of abuse stemmed either from conscious falsehood or from suggestions planted by overly suspicious adults.

Given this trial strategy, Anderson's attorney might reasonably conclude that the absence of a factual unanimity instruction was inconsequential—that the presence or absence of such an instruction would have no practical effect on the jury's deliberations. Moreover, as this Court noted in *Potts v. State*, 712 P.2d 385, 388 n. 1 (Alaska App. 1985), in cases where the State fails to elect a single, specific act as the basis for a charge of sexual abuse, a defense attorney might purposely choose not to object—and might even choose to run the risk of a non-unanimous verdict—in order to avoid the possibility that the State, if pressed on this issue, might decide to pursue multiple charges. For these reasons, Anderson's attorney might reasonably conclude that it would be better to keep silent about the omission of such an instruction, since this omission would furnish a point on appeal if the jury did not decide the case in Anderson's favor.

Obviously, we do not know what was going through Anderson's attorney's mind—in particular, whether Anderson's attorney consciously thought about this issue and decided that it was not worthwhile to object. But as we noted in *Potts*, "[o]ne of the purposes of the Plain Error Rule is to prevent parties from gambling on jury verdicts by [ignoring] errors perceived as harmless in the expectation that [the] error will not affect the verdict, but might result in a successful appeal if the verdict is unfavorable." *Id.*, 712 P.2d at 390 n. 7.

Thus, under Alaska law, it is the burden of the party claiming plain error to show that there was no tactical reason to withhold an objection in the lower court.[7]

In Anderson's case, a competent defense attorney might well have concluded that there would be no real advantage in insisting on a factual unanimity jury instruction, and that there was more to be gained by allowing the case to be submitted to the jury with this omission in the instructions. In other words, the record currently before us does not show that Anderson's attorney acted incompetently when he failed to object to the omission of this instruction.

(See *Potts*, 712 P.2d at 394 n. 11, noting that "[a] finding of plain error is . . . virtually the equivalent of a finding of ineffective assistance of counsel"—because, to qualify as "plain error", the error must be "so obvious and so prejudicial that . . . competent trial counsel should recognize it and seek its correction . . . by a timely objection.")

We will nevertheless address the final element of the plain error test—the question of prejudice—because we are also convinced that the omission of a factual unanimity instruction was harmless in Anderson's case.

*(b) The applicable test for harmless error*

Lack of jury unanimity (when the law requires it) is an error of constitutional dimension.[8] Thus, if all other aspects of the

---

6. *See Adams v. State*, 261 P.3d 758, 771 (Alaska 2011).

7. *Borchgrevink v. State*, 239 P.3d 410, 421 (Alaska App.2010); *Vann v. State*, 229 P.3d 197, 212 (Alaska App.2010); *Edwards v. State*, 158 P.3d 847, 857 (Alaska App.2007).

8. *Khan v. State*, 278 P.3d 893, 899 (Alaska 2012).

plain error test are met, the remaining question is whether the State can show that, under the facts of Anderson's case, the error was harmless beyond a reasonable doubt. *See Adams v. State,* 261 P.3d 758, 773 (Alaska 2011); *Khan v. State,* 278 P.3d 893, 895, 899–901 (Alaska 2012).

Anderson concedes that four of the charges against him—Counts 4 and 5, and Counts 10 and 11—were based on specific incidents, and thus the jury must have unanimously agreed on the facts underlying these counts.

But Anderson contends that the trial judge's error was not harmless with respect to six of the charges against him—Counts 2 and 3, and Counts 6 through 9. Anderson points out that each of these six counts covered a range of time, and there was no testimony linking these counts to a single, specified incident of abuse. Thus, Anderson argues, there is a distinct possibility that the jurors did not reach unanimity with respect to the precise incident that justified Anderson's conviction on these six counts.

This may be true, but that is not the test for assessing whether the judge's failure to give a unanimity instruction was harmless.

█ A finding of "harmlessness" in this context does *not* mean that the record demonstrates that the jurors indeed reached factual unanimity on each of the six challenged counts. Instead, "harmlessness" in this context means that the record demonstrates, beyond a reasonable doubt, that if the jury had received the proper instructions (*i.e.,* if the jurors had been told that factual unanimity was required), their verdicts on these six counts would have been the same.

This particular issue of law was addressed and decided by the United States Supreme Court in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

The underlying problem in *Neder* was that the trial judge improperly removed one element of the offense (the materiality of Neder's false statements) from the jury's consideration—incorrectly telling the jurors that this element was not for them to decide, but was rather for the judge to decide. *Id.,* 527 U.S. at 6, 119 S.Ct. at 1832.

In addressing this problem, the Supreme Court discussed two issues that are relevant to Anderson's case: First, does a trial judge's failure to instruct the jury on a necessary element of the offense automatically require reversal of the defendant's conviction, or is this type of error subject to harmless error analysis on appeal? And second, if this type of error can be harmless, what is the test for evaluating harmlessness in this context?

The Supreme Court first held that a judge's failure to have the jury decide every element of the offense is the type of error that is subject to harmless error analysis on appeal. *Id.,* 527 U.S. at 10–15, 119 S.Ct. at 1834–37. Next, the Supreme Court took up the issue of what "harmlessness" meant in this context.

The defendant in *Neder* argued that, even though there was overwhelming evidence that his false statement was material, it would nevertheless be improper to categorize the error in the jury instructions as harmless beyond a reasonable doubt. Neder pointed out that it was clear, from the record, that the jurors in his case never considered the issue of materiality—because the trial judge expressly told them not to. Based on this, Neder argued that if the Supreme Court were to affirm his conviction simply because the evidence of materiality was overwhelming, this would (as a practical matter) mean that the element of materiality was being decided by an appellate court rather than by a jury. *Id.,* 527 U.S. at 17, 119 S.Ct. at 1837–38.

The Supreme Court rejected this contention, viewing it as "simply another form of the argument that a failure to instruct [the jury] on any element of the crime is not subject to harmless-error analysis." 527 U.S. at 17, 119 S.Ct. at 1838. The Court held that the true question in these circumstances—*i.e.,* instances where an element of the offense is wrongly removed from the jury's consideration—is whether, given the evidence at trial, there is a reasonable possibility that the jury would have reached a different verdict if they *had been* asked to decide whether the government had proved

the omitted element of the offense. 527 U.S. at 18–20, 119 S.Ct. at 1838–39.

Seven years later, in *Washington v. Recuenco*, 548 U.S. 212, 220–22, 126 S.Ct. 2546, 2552–53, 165 L.Ed.2d 466 (2006), the Supreme Court held that this same harmless error test applies to cases involving *Blakely* error—that is, cases where the trial court fails to give the defendant a jury trial on a factual issue that will increase the defendant's maximum penalty (and instead decides the issue itself).[9] We note that Justice Scalia, one of the primary dissenters in *Neder*,[10] joined the *Recuenco* majority.

We acknowledge that the *Neder* decision has drawn criticism from some legal commentators,[11] and that one state has rejected the *Neder* harmless error test on state grounds.[12]

However, this Court followed the *Neder/Recuenco* harmless error test in *Lockuk v. State*, 153 P.3d 1012 (Alaska App.2007). *Lockuk* involved a *Blakely* error; we held that the error was harmless because, given the evidence in Lockuk's case, there was no reasonable possibility that, if the issues of fact had been submitted to a jury, the jury's decision would have been any different from the trial judge's:

> Lockuk has never disputed the fact that he has seven prior convictions for assault and one prior conviction for resisting arrest. Thus, on the record before us, there is no reasonable possibility that a jury would find in Lockuk's favor on the question of whether he had these prior convictions, or whether these convictions constituted instances of assaultive behavior (aggravator (c)(8)), or whether these convictions consti-

tuted instances of criminal behavior similar in nature to the assault for which he was being sentenced (aggravator (c)(21)).

*Lockuk*, 153 P.3d at 1018.

Accordingly, we hold that Anderson's case is governed by the same test. To determine whether the lack of a unanimity instruction was harmless beyond a reasonable doubt, we must ask whether, if Anderson's jury had received a proper instruction on factual unanimity, there is a reasonable possibility that the jury's verdicts would have been different.

*(c) Why we conclude that, under the facts of Anderson's case, there is no reasonable possibility that the jury's verdicts would have been different*

As we noted earlier, the charges against Anderson involved three different young girls. Two of the girls (K.M. and A.K.) were sisters living in the same household, but the third girl (G.B.) lived in a separate household, and she was not acquainted with the other two girls. The sexual abuse involving G.B. was reported first. Several months later, when the police were nearing completion of their investigation into the allegations involving G.B., the police received a separate, independent report that Anderson had sexually abused K.M. and A.K.

The only obvious link between the case involving G.B. and the case involving K.M. and A.K. was that each girl had a parent who was friends with Anderson through work. (The mother of G.B. and the father of K.M. and A.K. both worked at the same car dealership where Anderson was employed.)

At trial, Anderson's attorney argued that all of the accusations against Anderson were

---

9. *See Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

10. Justice Scalia's dissenting opinion on the question of harmless error is found in *Neder*, 527 U.S. at 30–40, 119 S.Ct. at 1844–48.

11. *See* Linda E. Carter, "The Sporting Approach to Harmless Error in Criminal Cases: The Supreme Court's 'No Harm, No Foul' Debacle in *Neder v. United States* ", 28 American Journal of Criminal Law 229, 232–33 (2001) (arguing that the *Neder* decision "is inconsistent with the underlying principles of our adversary system and the [proper] role of appellate courts"); Roger A. Fairfax Jr., "Harmless Constitutional Error and

the Institutional Significance of the Jury", 76 Fordham Law Review 2027, 2030 (2008) (arguing that when jury instructions entirely omit an element of the offense, this leads to "flawed verdicts" that cause "profound ... injury" to "the very structure of the Constitution itself" and to the jury's role in criminal trials).

12. *See State v. Kousounadis*, 159 N.H. 413, 986 A.2d 603, 616 (2009) (citing the authorities listed in the preceding footnote, and holding that, under the New Hampshire Constitution, a jury's failure to decide an element of the offense is a structural error that requires reversal).

false. In his summation to the jury, the defense attorney pointed out that Anderson had never wavered in his denial of these charges, from the time he was first interviewed by the police. The defense attorney also pointed out that there was no medical evidence to corroborate the girls' testimony, nor had any adult ever observed Anderson acting inappropriately with the girls.

With respect to the charges involving G.B., the defense attorney suggested that G.B. was a troubled young girl who was manifesting behavioral problems (her parents were separated at the time), and that G.B.'s accusation of sexual abuse was the product of a suggestion planted in her mind by an overly suspicious day-care provider.

According to the trial testimony, this day-care provider observed G.B. playing in a manner that, to him, contained an inappropriate sexual aspect. The day-care provider's observation prompted him to "ask [G.B.] several times what was wrong". When G.B. did not immediately respond, the day-care provider told G.B., "You need to tell me who's touched you inappropriately, so I can fix it." At that point, G.B. told him that "Mr. Andy [*i.e.*, Anderson] had done some things."

Anderson's attorney argued that G.B.'s answer to the day-care provider was simply the product of suggestion—and that things mushroomed from there, as more and more adults became involved, and G.B. felt that she could no longer retract what she had said.

To explain the apparently independent accusations that Anderson had sexually abused two sisters from another family, the defense attorney noted that G.B.'s mother worked in the same car dealership as K.M. and A.K.'s father. The defense attorney argued that the older of the two sisters, K.M., was aware of rumors circulating at the car dealership (*i.e.*, rumors that Anderson had engaged in sexual improprieties), and that she fabricated her own accusations against Anderson simply because she "[wanted] to get some man in trouble".

The defense attorney then suggested that K.M.'s younger sister, A.K. simply went along with her sister's lie because K.M. was older and was "the leader".

■ In sum, Anderson offered one blanket defense to all of the charges against him: the charges were false, the girls knew that the charges were false, and Anderson was factually innocent.

Given this defense, and given the State's evidence, we conclude that even if Anderson's jury had been instructed on the need for factual unanimity, there is no reasonable possibility that the jury would have reached different verdicts. We accordingly conclude that the trial judge's error in failing to give such a unanimity instruction was harmless beyond a reasonable doubt.

To round out our discussion of this issue, we need to address the jury's "not guilty" verdict on Count 1.

In Count 1, Anderson was accused of sexually abusing G.B. sometime between December 1, 2005 and April 27, 2006. According to the trial evidence, Anderson had contact with G.B. both at her mother's house and at the car dealership where Anderson and G.B.'s mother worked. But also according to the evidence, Anderson did not start visiting G.B.'s mother's house until July 2006 at the very earliest. Thus, of necessity, the conduct alleged in Count I must have occurred at the car dealership.

Even though a portion of G.B.'s police interview suggested that some of the sexual abuse occurred at the car dealership, G.B. testified at trial that all of Anderson's wrongful sexual touching occurred at her mother's house, and not at the car dealership (even though G.B. acknowledged that she sometimes spent time with Anderson when she visited the dealership with her mother).

In this context, the jury acquitted Anderson of Count I—apparently because they concluded, based on G.B.'s trial testimony, that the State's evidence was insufficient to establish, beyond a reasonable doubt, that Anderson had sexually abused G.B. at the car dealership. Understood in this way, the jury's decision to acquit Anderson of the charge contained in Count 1 is fully consistent with their decision to convict Anderson of the remaining ten counts.

*The sufficiency of the evidence to support the jury's verdicts on Counts 2 and 3*

 Anderson argues that the evidence presented at his trial is legally insufficient to support the jury's guilty verdicts on Counts 2 and 3, both involving G.B.

Count 2 alleged that Anderson engaged in sexual abuse of G.B. between April 28 and July 31, 2006. During most of this time period, Anderson's only contact with G.B. was at the car dealership—and, as we have already described, it appears that the jury rejected the State's contention that any of the sexual abuse occurred at the car dealership. However, the evidence showed that Anderson began visiting G.B.'s mother's house in July 2006—where G.B. asserted that all of the abuse occurred.

Thus, Anderson's argument really amounts to the contention that it is unlikely that Anderson sexually abused G.B. at her mother's house in mid- to late July. But viewing the evidence in the light most favorable to upholding the verdict (as we must),[13] the jury could reasonably have concluded that Anderson began to abuse G.B. in July 2006.

We now turn to Anderson's claim that there was insufficient evidence to support Count 3. Count 3 spanned a time frame of approximately seven months: it alleged that Anderson sexually abused G.B. between July 1, 2006 and January 27, 2007. Anderson claims that the evidence was insufficient to support the jury's verdict on this count because, in her testimony, G.B. failed to connect any particular incident of sexual abuse to Count 3.

Even though G.B. may not have specified a particular incident of sexual abuse, there was sufficient evidence to justify the jury's verdict on Count 3. G.B. testified that Anderson sexually abused her often during his visits to her mother's house. These visits began in July or early August 2006, and they continued until late January 2007, when G.B. disclosed the abuse to an adult. This testimony was sufficient to support a guilty verdict on Count 3.

It appears that Anderson's argument is really a jury unanimity claim—the problem that we addressed in *Covington*, and the problem that we addressed in the preceding section of this opinion, where we held that the lack of a unanimity instruction was harmless error in Anderson's case.

*Anderson's claim that his sentence is excessive*

 Anderson was a first felony offender, and he thus faced a presumptive sentencing range of 5 to 15 years' imprisonment for each of the ten counts of second-degree sexual abuse of a minor.[14] Anderson stipulated that one aggravator applied to his sentencing for the crimes involving A.K. and G.B.: that he knew or reasonably should have known that his victims were particularly vulnerable because of their extreme youth.[15] (A.K. and G.B. were respectively five to six years old, and seven to eight years old, at the time of the abuse.)

Because of this aggravating factor, the sentencing judge—Superior Court Judge Vanessa White—was authorized to impose sentences that exceeded the presumptive sentencing range.[16] However, she ultimately chose not to exercise this authority. Judge White imposed sentences on each count that were within the presumptive range, but she made these sentences partially consecutive, so that Anderson's composite sentence was 37 years with 18 years suspended—19 years to serve.

Anderson argues that Judge White failed to adequately justify her sentences on each individual count. Anderson relies on what the Alaska Legislature said in 2005 when, following the United States Supreme Court's decision in *Blakely*, it amended our state's presumptive sentencing law to provide for presumptive *ranges* of imprisonment for various categories of offense, instead of specify-

---

13. *See Silvera v. State*, 244 P.3d 1138, 1142 (Alaska App.2010) (citing *Morrell v. State*, 216 P.3d 574, 576 (Alaska App.2009); *Daniels v. State*, 767 P.2d 1163, 1167 (Alaska App.1989)).

14. *See* AS 12.55.125(i)(3)(A).

15. AS 12.55.155(c)(5).

16. AS 12.55.155(a)(2).

ing a particular presumptive term of imprisonment.

Although the new presumptive ranges were generally constructed by taking the pre-existing presumptive term of imprisonment as the low end of the new sentencing range, the legislature declared that it did not intend to produce an overall increase in the sentences for felonies. Here is the pertinent text of section 1 of SLA 2005, Ch. 2—the session law that enacted our current system of presumptive sentencing ranges:

> *Legislative Intent* .... Although the presumptive terms [under current law] are being replaced by presumptive ranges, it is not the intent of this Act ... to bring about an overall increase in the amount of active imprisonment for [felonies]. Rather, this Act is intended to give judges the authority to impose an appropriate sentence, with an appropriate amount of probation supervision, by taking into account the [sentencing] consideration[s] set out in AS 12.55.005 and 12.55.015.

Anderson argues that, in light of this expression of legislative intent, sentencing judges should be required to affirmatively justify any upward departure from the low end of the applicable presumptive sentencing range.

Whatever may be the merits of Anderson's argument, this issue is moot in Anderson's case. Even if Judge White had sentenced Anderson to a 5–year term of imprisonment for each of his ten offenses (the low end of the applicable presumptive sentencing range), Judge White might still have reached a composite sentence of up to 50 years to serve by imposing these sentences consecutively.

The real question here is whether, given the totality of Anderson's conduct and history, a sentence of 19 years to serve is clearly mistaken.[17]

Anderson was found guilty of repeatedly abusing three different children over a period of many months. Judge White found that Anderson was predatory, and that his non-threatening, avuncular demeanor made him a particular danger to children. The judge thought that Anderson was capable of achieving rehabilitation, but she concluded that Anderson's path to rehabilitation would be "a very difficult and protracted period of climbing [a] very high mountain".

These factors can legitimately support a lengthy sentence. We note that even under the pre–2005 sentencing ranges for sexual abuse of a minor, when the penalties were substantially lower, this Court repeatedly approved sentences of up to 20 years to serve for offenders who committed multiple acts of abuse against the same victim, or who committed acts of abuse against multiple victims.

*See State v. Andrews*, 707 P.2d 900, 913 (Alaska App.1985) (establishing a benchmark sentencing range of 10 to 15 years to serve for first offenders convicted of aggravated instances of sexual abuse of a minor); and *Haire v. State*, 877 P.2d 1302, 1306 (Alaska App.1994) (acknowledging that in "exceptional first-offense cases", this Court had "typically approved composite sentences involving up to twenty years of unsuspended incarceration").

The sentencing ranges for sexual abuse of a minor are now significantly higher than they were when *Andrews* and *Haire* were decided. Given this fact, and given the facts of Anderson's case, we conclude that Anderson's sentence of 19 years to serve is not clearly mistaken.

*The question of whether Anderson should be ordered to pay the full attorney's fee specified in Alaska Criminal Rule 39*

▪ Under Alaska Criminal Rule 39(c), a defendant who receives court-appointed counsel must normally be ordered, at the time of sentencing, to partially reimburse the State for the costs of the defendant's publicly funded counsel. According to the schedule

---

**17.** *See Brown v. State*, 12 P.3d 201, 210 (Alaska App.2000); *Comegys v. State*, 747 P.2d 554, 558–59 (Alaska App.1987) (when reviewing a composite sentence imposed for two or more criminal convictions, an appellate court will assess whether the combined sentence is clearly mistaken, given the whole of the defendant's conduct and history). *And see McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to affirm a sentencing decision unless the decision is clearly mistaken).

of costs set forth in Criminal Rule 39(d), a defendant who receives the services of court-appointed counsel in a prosecution for a class B felony (such as second-degree sexual abuse of a minor [18]) must pay an attorney's fee of $1500 if the case goes to trial. This is the amount of money that Judge White ordered Anderson to pay.

But Anderson's case is different from the norm, in that he was represented at trial by a privately retained attorney. Anderson did eventually receive the services of a court-appointed attorney, but this attorney represented Anderson only in connection with the sentencing proceedings.

Anderson argues that the $1500 fee set forth in Rule 39 is premised on the assumption that the defendant received the services of a court-appointed attorney throughout the case, and not just at sentencing. Thus, Anderson, argues, it is plainly unfair to require him to pay the same amount of money as if he had been represented at trial by a court-appointed lawyer.

Although there appears to be no provision of Rule 39 that deals directly with this situation, we note that Criminal Rule 53 gives the superior court the authority to relax the provisions of Rule 39(d) if "strict adherence to them will work injustice". The facts of Anderson's case may present a situation where imposition of the normal $1500 fee will work injustice. We therefore direct the superior court to reconsider this matter.

*Conclusion*

For the reasons explained in this opinion, we AFFIRM Anderson's convictions and his composite sentence, but we REMAND Anderson's case to the superior court for reconsideration of the amount of attorney's fee he should pay.

Judge MANNHEIMER, concurring.

I write separately to address the issue of the superior court's decision to post a "closed hearing" sign on the courtroom door during the testimony of the three children. Although we find no plain error in this case, I believe that trial judges should be cautious about closing courtrooms to the public, even to this limited extent.

The superior court's rationale for preventing members of the public from entering the courtroom while the three children were testifying was to prevent disruptions of the proceedings and avoid distractions to the children. But in my experience, courtroom proceedings are generally not interrupted by the comings and goings of spectators. Generally speaking, spectators are aware that court proceedings are taking place (or may be taking place) behind the courtroom doors, and they are careful to enter quietly.

I also note that, in the present case, the superior court made no effort to prevent spectators who were already present in the courtroom from *leaving* the courtroom during the children's testimony—an action that was seemingly just as likely to distract the children.

It may be that the judge had some case-specific reason to impose this restriction on people entering the courtroom, and that the only reason the judge failed to explain her rationale on the record was that neither party objected to the judge's proposed action.

Nevertheless, I do not believe that the mere speculative possibility of disruption or distraction could justify the trial judge's action in this case. In particular, I question whether it is proper to prevent people from entering a courtroom during public judicial proceedings in the absence of an affirmative demonstration of need, and in the absence of some reason to believe that lesser measures—for example, a sign reading "Quiet Please; Court is in Session"—would not be sufficient to deal with the problem.

---

**18.** AS 11.41.436(b).